*DANIELS vs. BURNHAM.*

**APPEAL FROM THE COURT OF THE FIRST DISTRICT.**

If A direct B to purchase a cargo, and draw for the amount on C., on the protest of the bills A is immediately liable for the amount of the cargo, although B produces not the protested bills.

The plaintiff, residing in Buenos Ayres, at the request of the defendant, purchased and shipped to the house of Z. Atkins, at Matanzas, of which the defendant was a partner, five hundred quintals of jerked beef. In the letter authorizing the purchase, the plaintiff was directed to draw for payment on Delaplaine and Co. of New York, with an assurance from the defendant, that his drafts would be honored. Under these instructions, the plaintiff drew two drafts on Delaplaine and Co., one for one thousand dollars, which was accepted and paid. The other for thirteen hundred and thirty-three dollars and twelve and a half cents, made payable to the order of Wm. P. Ford and Co., at sixty days sight, was dishonored and protested for non payment. It appeared that when the bills were drawn, neither Atkins or the defendant, had funds in the hands of Delaplaine and Co., or any authority to draw the bills. When the bill was protested for payment, it bore the endorsement of Wm. P. Ford and Co.

This suit was brought to recover the amount of the bill, with damages and interest.

The defendant pleaded the general issue ; and, further, that the plaintiff was not the holder of the bill, and required the production of it on the trial. The plaintiff neither produced the bill, or showed that he had taken it up. There was a verdict and judgment for the plaintiff for the amount of the bill, with twenty per cent. damages, and interest for three years at six per cent.

The defendant appealed.

*Hennen,* for appellant.

*Preston,* for appellee,

DANIELS
*vs.*
BURNHAM.

*Porter, J.*, delivered the opinion of the court.

The defendant resided at Matanzas, in the island of Cuba, in the year 1825, and while there, addressed a letter to the plaintiff, then residing at Buenos Ayres, in which he requested him to purchase and ship to a mercantile establishment in the former place, of which the defendant was a member, five hundred quintals of jerked beef. He, in the same letter, directed the plaintiff to draw on the house of John F. Delaplaine and Co., for the purchase money of the beef. The plaintiff complied with the instructions, shipped the beef, and drew the bills of exchange. One of them, for one thousand dollars, was paid ; the other, for one thousand three hundred and thirty-three dollars and twelve and a half cents, was refused acceptance, and this suit is brought to recover the amount, together with damages and interest. It appears that the bill was negotiated by the plaintiff, and, at the time of protest, had on it the endorsement of W. P. Ford and Co. It is proved, that at the time of giving directions to thee plaintiff to issue the bills, neither the defendant, nor the firm of which he was a member, had funds in the hands of the drawees, nor any authority from them, to draw bills of exchange on their house.

To the petition filed in the case, which claims from the defendant the amount of the bill of exchange, with damages, interest and costs, the defendant has answered by a general denial. and an averment, that the petitioner is not the holder of the bill of exchange, and is required to produce it on the trial.

This he failed to do, or to shew that he had taken it up, and, the question is, whether, under these facts, he is entitled to recover. The judge charged the jury he was not ; they disregarded, however, the instruction, and found against the defendant. He moved for a new trial, but the judge having, in the mean time, altered his views as to the plaintiff's right of action, refused the application, and gave judgment in

pursuance of the verdict. From that judgment the defendant has appealed.

The defendant has received property from the plaintiff, for which he has not paid, and, in justice and equity, he should do so. It was insisted, on argument, that the defendant was liable on the bill drawn on Delaplaine and Co., and that the holder of that bill might yet sue him. That the recovery in this action could not be offered as a bar to the claim of the indorsee.

If this position be true, it is certainly a good defence; but it is not. The defendant is not liable to the holders of the bill. They have nothing to do with him, nor he with them. It is a general rule, to which there are few exceptions, that no person is responsible on a bill of exchange, but those who are parties to it, and whose names are on it. This rule extends, as well to bills drawn by agents as by others, and unless (with the exception of very particular cases) they sign in the name of the principal, he is not bound. So rigid is the commercial law on this subject, that if the factor or agent, in remitting the funds of his principal, takes a draft in his own name for the goods he has sold, he is personally responsible to the principal, for whose use he took it, in case the draft is dishonored. The cases are numerous on these points, and the authorities clear. Where an action was brought against two parties, on a note which one of them subscribed, the plaintiff was nonsuited, though he offered to prove the debt was contracted for, and had turned to their joint benefit. So in another case it was held, that a bill, drawn by one member of a firm, gave no right of action against the firm, though the draft was made for their benefit, and the funds raised had been applied to their use. And in another and still more analogous case to that before the court, where the agent of a company had drawn bills in his own name, and after acceptance had them discounted, the court to which the cause was first submitted, held the

company responsible, because the bills had been drawn and discounted as their bills, and for their behoof. But on appeal, this judgment was reversed; the appellate tribunal considering, that the circumstance of the funds being raised by discounting the bills, was entirely a matter between the company and their agents, with which the discounters had no concern. The elementary treaties which recognize the doctrine just stated, except cases *particularly circumstanced*, but do not state what kind of cases would present these exceptions. They are, perhaps, those where the principal may have been in the habit of discharging debts contracted in his agent's name, and where this was known to the party taking the bill. But no exception at all approaching the case before the court, is to be found in the books. The only decision which seems to militate against it, so far as we have examined, is that of *Fern vs. Harrison*, and that case does not impugn the principle we have just recognized. The parties who sent an agent into market, to discount a note, were held responsible, because his representations made them so, and they had not limited his authority. Justice Bayley, in his treatise on bills, in commenting on it, considers that the case establishes, " that if no restraint is imposed on the agent, the principal may be bound by his guarantee; at least such guarantee will be a sufficient consideration to support a subsequent promise, by the principal, to pay the bill or note." So the case is understood by Thompson, a late writer on bills of exchange, who has benefitted the profession, by an excellent and learned treatise on them. This case was three times before the Court of King's Bench, and the judges were at first divided on it. In the instance before us, there is no evidence the bill was negotiated in the name of the defendant, or for his use. His signature is not to it. Nor is it stated, the bill was drawn on his account. No proof is furnished, that the agent ever gave to the payees the guarantee of the person to whose use the funds were ap-

plied.   See *Chitty on Bills, Ed.* 1821, *p.* 36—3 *Kent's Com.*
18—*Thompson on Bills,*  244, 270  *to* 273—*Bayley on Bills,*
48, 260—3 *Term Rep.* 757—4 *ibid* 177—2 *Camp,* 308—15
*East* 7.

An other ground of defence was presented.  It was urged
the plaintiff had obtained funds by negotiating the bill, he
was directed to draw, and consequently had no claim on
the defendant, until he took that bill up.   The right of a
party to revert to his original contract, under circumstances
such as the case before us presents, without accounting for,
or surrendering up, the security he may have received, is not
well settled in the commercial law.   The cases conflict.   In
some it has been held, that if the note or draft given does
not turn out productive, nor prove to be what the party taking
it had a right to presume it would, he may consider it as a
nullity, and resort at once to his original contract.   In others
it has been decided, that if the draft or note has been nego-
tiated, recovery cannot be had on the agreement, without
producing the instrument, or giving some account why it is
not produced.   But in these cases, where the doctrine last
mentioned has been acted on, the party sued had either
given his own obligation, or was a party to the bill or note,
by endorsement or otherwise.   And the controuling reason
for these decisions, appears to be, that if the instrument was
not returned, the defendant might hereafter be sued on it,
and thus made twice responsible for the same debt.—
*Thompson on Bills,* 199—*Chitty on Bills,* 199, 126—*Bayley
on Bills* 248 *to* 254—6, *Term Rep.* 52—4, *Espinasse,* 59.—
3, *Cranch,* 311.

And such appears to be the only true reason on which
such a conclusion can rest.   For where the defendant has
given what is of no value ; or where, as in the case before
us, he has given nothing, but merely induced the plaintiff to
incur liability on his account ; why should that which is
valueless in itself, and which can never affect him, prove an

obstacle to the recovery of a debt, which, in equity and conscience, he should discharge.   It was closely pressed on argument, that the plaintiff had got the money from the sale of the bill, and was seeking to obtain it a second time from the defendant.   This may be true, though the circumstances of the case cast considerable doubt on it: but admitting it to be so, the plaintiff has, at least, incurred liability on the defendant's account, to the amount demanded from him. Then how stands the latter?   He has got the property ; has paid no one, and if he is not responsible to the plaintiff, is completely discharged from all responsibility ; for *non constat*, that the want of the money now sued for, may not be the reason why the plaintiff cannot take up the bill.   But waiving these considerations, the legal responsibility of the defendant arises from his having entered into a contract, which he has broken, and from his having received property for which he has not paid.   The funds produced by the draft which was not accepted, can be considered in no other light, than money obtained by the drawer on his personal responsibility, as cash borrowed by him and applied to the defendant's use.

*If A direct B to purchase a cargo and draw for the amount on C, on the protest of the bills, A is immediately liable for the amount of the cargo, although B produces not the protested bills.*

This opinion renders it unnecessary to express any on the bill of exceptions which appears on record.   But there is error in the judgment below, for which it must be reversed. The jury have found for the plaintiff, not only the balance of the money due on the merchandise purchased by him for defendant, but also twenty per cent. damages on the bill, and interest thereon for three years, at six per cent.   As the plaintiff has not taken up the bill, he cannot assert any claim *on it*.   His right to recovery here, depends on his original agreement, considering the bill of exchange as a nullity. By that agreement there was $ 1333 12 1-2 cents, due at the time this suit was commenced.

It is therefore ordered, adjudged and decreed, that the judgment of the District Court be reversed and annulled,

and it is further ordered and adjudged, that the plaintiff do recover of the defendant, the sum of thirteen hundred and thirty-three dollars twelve cents, with costs in the court below—those of appeal to be paid by the plaintiff and appellee.