## No. 10,202.

UNION NATIONAL BANK OF NEW ORLEANS vs. MRS. EUGÉNIE FORSTALL, WIDOW OF V. CHOPPIN.

1. The subsequent holder of a promissory note, executed by a mother in her individual capacity, cannot recover the same from the minor children of the maker, on the ground that

the money borrowed on such note was used for the support of said minors or for the preservation of their properties. Such holder, having been no party to the original transaction, acquired the notes with only the rights and obligations imported by their plain tenor, and has no concern with the use which the maker made of the money loaned.

2.   A tutor is prohibited from borrowing money for the minors without judicial authority based on the advice of a family meeting. A contract of loan entered into by the tutor, without authority, is not binding, as such, on the minors; nor will an action *ex æquo et bono*, lie therefor, against the minors, on the ground that the money borrowed was used for their support, unless it can be repaid out of their revenues; nor on the ground that it was used for the preservation of their property, without clear proof that such use enured to their benefit.

APPEAL from the Twenty-second District Court, Parish of St. James. *Duffel*, J.

*Carleton Hunt* for Plaintiff and Appellant.

*Pugh & Lambremont* for Defendants and Appellees.

The opinion of the Court was delivered by

FENNER, J.   In 1878, the "Home Plantation" belonged in indivision to Mrs. Eugenie Choppin and her five children, Fernand Choppin, Mrs. Robert Dugué, Edward Choppin, Forstall Choppin and Louis H. Choppin. The three last were minors under the tutorship of their said mother.

On March 14th, 1878, Mrs. Choppin and her two major children, Fernand and Mrs. Dugué, acting solely in their individual capacities, executed certain promissory notes secured by an act of mortgage. The act recites that the parties aforesaid "are indebted unto Charles W. Cammack in the sum of $20,000, amount of a loan which they have this day received from him, for which they have given their promissory notes, etc., * * and in order to secure the payment of said notes, the said Mrs. Choppin, Fernand Choppin and Mrs. Dugué hereby specially mortgage * * all their respective right, title and interest in and to the plantation called the 'Home Place.'"

Nothing in the notes or acts indicates that the parties assumed or intended to act for, or to bind, anybody but themselves, or to mortgage any property except their own respective interests in the "Home Place."

The Union Bank, which does not appear to have had any connection with the transactions between these parties, having subsequently become the holder and owner of six of the notes, brings the present action, not only against the makers thereof, but also against three minor children of Mrs. Choppin (now become majors) and seeks to recover a judgment *in solido* against them all with mortgage on the whole "Home Place."

The basis for this demand against the minors is the allegation that "said notes were given for supplies and advances furnished the Home Place Plantation, which belonged to Mrs. Choppin and all her said children; * * that the minors were represented by their mother in her capacity as natural tutrix; that it was absolutely necessary to incur said indebtedness for the support of said minors, and for the cultivation and preservation of their property, and that said supplies and advances were employed for the preservation of said property and enured to the benefit of said minors."

There was judgment in the court below against the makers of the notes, with mortgage on their interests in the plantation (of which there is no complaint) and rejecting the demand against those who were minors. The bank appeals.

It is difficult to understand what right the bank has to set up any claim against these minors. Her suit is upon negotiable promissory notes. She propounds no rights except such as are based on her being holder and owner of said notes. She never had any dealings with the minors or with any person professing or purporting to represent them. They are, as to her, perfect strangers. She acquired the notes with the rights and obligations imported by their plain tenor and by the tenor of the act of mortgage securing them—and no more. It is not alleged that Mrs. Choppin acted for or intended to bind them by her signature to these notes, and there is not a word of proof to that effect. All that is claimed is, that, after the notes were executed, the money received therefrom was used for the benefit of the minors and their property. What concern has the bank, as subsequent holder of these notes, with the disposition of these proceeds?

If Mrs. Choppin had signed the notes in her capacity as tutrix, though without authority, or if the notes had been given in the course of some dealing between the bank and herself acting as tutrix and for some debt arising from such dealing, and though signed by her only individually, yet obviously intended to bind the minors, the following cases quoted by the learned counsel might apply, and, on the requisite proof of benefit to the minors, they might *ex æquo et bono* be held bound. Succ. of Johnson, 4 Ann. 253; Leonard vs. Hudson, 12 Ann. 840; White vs. McDowell, 4 Ann. 543.

But in this case the bank had no dealings with the tutrix or the minors, and has simply acquired individual notes of the parties thereto for money lent to them, not purporting, in any manner, to affect the minors. She has acquired no rights against the latter, Daniell, Neg.

Inst., § 303; Daniels vs. Burnham, 2 La. 245; Cragin vs. Lowell, 109 U. S. 198; 127 U. S. 603.

On other grounds, however, even if Mrs. Choppin had signed the notes as tutrix, the proof would fail to make out a case against the minors.

Article 353 of the Code prohibits the tutor from borrowing money for the minors without judicial authority based on the advice of a family meeting.

So far as this money is said to have gone to the support of the minors, it cannot be recovered, because Article 350 provides that the expenses incurred for the minor cannot exceed his revenues. Such expenses, when incurred without authority, cannot be recovered out of the minor's capital, as is here attempted. As for the allegation that the money was employed in the preservation of the minors' property, that can give no basis for recovery except to the extent, and on the ground, that it enured to the benefit of the minor, and that he cannot be permitted to enrich himself at another's expense.

The evidence here shows that the cultivation of the plantation in which the money was used resulted in a loss every year and did not, therefore, enrich the minors or enure to their benefit.

"The tutor is prohibited, under the wise provisions of our law, from borrowing money on behalf of minors. If their support, or the preservation of their property require an expenditure beyond their revenues, it is the duty of the tutor to cause to be convened a family meeting, to deliberate upon the propriety of making a loan. In the absence of such authority, the tutor can make no contract binding as such, which creates an indebtedness on the part of his wards. Those who deal with tutors acting on behalf of minors do so at their peril." Payne vs. Scott, 14 Ann. 760; Urquhart vs. Scott, 12 Ann. 674. See 33 Ann. 355; 32 Ann. 907, 100; 23 Ann. 421; 22 Ann. 296; 21 Ann. 375.

Judgment affirmed.