(36 South. 354.)

No. 14,795.

Succession of WIEMANN.

(March 3, 1904.)

JUDGMENT—AMENDMENT.

1. Where a creditor issues a writ of fieri facias, and partially executes a judgment obtained by him, he has no standing, in answer to a devolutive appeal taken by the debtor, to ask for an amendment of such judgment.

2. Where only one of several heirs opposes the account filed by an administrator, and such account in due time is homologated so far as not opposed, judgment should not be rendered against the administrator in favor of the heirs who have filed no oppositions.

3. Where an administrator, with the concurrence of the heirs of a succession in which a minor is interested, but with no better authority, continues a commercial business of which his decedent was proprietor, the minor is not bound by his action; and, as to him, the administrator is entitled to be credited on his account with only such disbursements and expenses as should have been made and incurred if he had settled the succession in conformity to law.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Walter Byers Sommerville, Judge.

In the matter of the succession of John M. Wiemann. Edna R. Wiemann interposed an opposition. From the judgment, certain of the parties appeal. Modified.

See 106 La. 387, 30 South. 893.

Dinkelspiel & Hart, Buck, Walshe & Buck, John B. Fisher, and James Barkley Rosser, Jr., for appellants R. J. Mainegra, Henry Bensel, H. P. Walter, and Mrs. Charlotte H. Leidlich, testamentary executrix of the estate of George Leidlich. William Stirling Parkerson, for appellee Edna R. Wiemann.

Statement of the Case.

MONROE, J. John Moritz Wiemann, then a widower residing in New Orleans, died in the parish of St. Tammany July 1, 1894, leaving property in this city consisting in part of a going commercial business, carried on in two stores, the one on Tchoupitoulas and the other on Magazine street, and leaving also seven major and two minor children, issue of his marriage, to wit, Charles F., Thomas J., Isabella (wife of W. F. Sturke), Elizabeth (wife of Philip Peter), Annie (wife of W. J. Shriever), Alice (wife of W. T. Pate), Agnes (wife of Henry Samuel), majors, and Mary and Edna Roberta, minors. Upon July 5th the parties thus named, including the minors, signed an instrument in writing whereby they agreed that Charles F. Wiemann and Philip Peter should continue the commercial business of the succession for the common benefit; that Peter should apply for the administration, and that thereafter they should meet and consider the propriety of organizing a limited liability company. The business was accordingly continued as agreed upon. Peter applied for the administration of the succession, and, having caused an inventory to be made, took the oath, gave bond, and received his letters; and upon April 5, 1895, a corporation called the John M. Wiemann Hardware Company, Limited, was organized to carry on the commercial business, with a capital of $9,000, divided into 90 shares, of $100 each, of which Charles F. Wiemann took 20 shares; Philip Peter, 10 shares; Mrs. Peter, 10 shares; W. T. Pate, 2 shares; Mrs. Pate, 8 shares; Mrs. Sturke, 10 shares; and Mrs. Samuel, 10 shares. No money was paid by any of these parties, who, to the exclusion of the minors and other heirs, seem to have assumed the ownership of the stock in trade and business of the two stores, and to have turned the same over, in lieu of cash subscriptions, to the corporation thus organized, which then entered upon its business career under the management of Charles F. Wiemann and Philip Peter.

In May, 1895, a judgment was obtained, upon the petition of all the children (Charles F. Wiemann professing to represent the minors), recognizing them as the heirs entitled to inherit the estate of their deceased parents, and later in the same month Charles F. Wiemann was appointed tutor, and R. J. Mainegra undertutor, of the minors. In September a suit for partition was filed by some of the major heirs, which was, however, abandoned. In February, 1896, Peter, as administrator, obtained an order to sell certain stocks belonging to the succession, and made the sales as authorized. With the money thus obtained, and other funds which came into his hands either as administrator or through his management of the Wiemann Hardware Company, he bought from Thomas J. Wiemann, Mrs. Shriever, Mrs. Pate, and Mrs. Samuel their respective interests in the succession and corporation, paying therefor the sum of $1,800 to each of them, and for some unexplained reason taking the transfers in his own name. He also appears to have taken a transfer of the interest of Charles F. Wiemann in the real estate of the succession, but in connection therewith executed a counter letter saying that he had done so as a matter of convenience, and that the title remained in Wiemann. The corporation continued in business until March, 1900, when, being insolvent, Peter, upon the petition of two of the creditors, was appointed receiver, and its affairs were wound up and its property sold. In July, 1900, Edna Roberta Wiemann attained majority, and in October of that year ruled Peter into court to give an account of his administration. He excepted to the rule, and his exceptions were sustained. Upon appeal to this court the judgment so rendered was reversed. Succession of Wiemann, 106 La. 387, 30 South. 893. And in January, 1902, he filed his account, which was opposed by Edna Roberta Wiemann alone, and in due time was homologated so far as not opposed.

The inventory of the succession shows the following assets:

| | |
|---|---:|
| Cash | $ 1,974 00 |
| Contents of store on Magazine street | 4,280 67 |
| Accounts of store on Magazine street classed as good | 1,867 46 |
| Accounts of store on Magazine street classed as doubtful | 517 06 |
| Contents of store on Tchoupitoulas street | 7,367 66 |
| Accounts of store on Tchoupitoulas street classed as good | 1,567 37 |
| Accounts of store on Tchoupitoulas street classed as doubtful | 438 56 |
| Contents of warehouse | 287 87 |
| Real estate, Tchoupitoulas street | 1,400 00 |
| Real estate, Philip street | 1,300 00 |
| Life insurance | 1,560 00 |
| Stock Teutonia Insurance Co | 960 00 |
| Stock Am. W. L. & C. Works | 1,200 00 |
| Stock Cosmopolitan Building & Loan Association | 420 00 |
| Stock Pythian Hall Association | 10 00 |
| Mortgage note | 400 00 |
| Mules, harness, and wagons | 250 00 |
| Household effects | 79 00 |
| Gas deposit | 6 00 |
| Total | $26,155 75 |

The account shows that, from collections, sales, and otherwise, there have come into the hands of the administrator the following amounts, to wit:

| | |
|---|---:|
| Cash | $ 1,974 00 |
| Recd. from sales of merchandise at stores 837 Magazine street and 769 Tchoupitoulas street from July 1, 1894, to April 5, 1895.. | 24,456 60 |
| Merchandise in stores Magazine and Tchoupitoulas streets | 10,718 31 |
| Accounts Magazine street store classed as good | 1,532 03 |
| Accounts Magazine street store classed as doubtful | 462 49 |
| Accounts Tchoupitoulas street store classed as good | 1,153 17 |
| Accounts Tchoupitoulas street store classed as doubtful | 371 00 |
| Stock Teutonia Insurance Company | 1,032 00 |
| Stock Am. W. L. & C. Works | 1,335 00 |
| Stock Cosmopolitan Building & Loan Association | 180 37 |
| Mortgage note | 400 00 |
| Jefferson Lodge K. of P., relief | 75 00 |
| Orient Grove, U. A. O. D | 40 00 |
| La Circle No. 1, U. A. O. D | 22 50 |
| Teutonia Insurance Company, dividends | 160 00 |
| Am. W. L. & C. Works | 90 00 |
| New Orleans Paint & Oil Club | 20 00 |
| Rents collected from Philip street house | 958 00 |
| Total | $44,980 57 |

The account also shows disbursements and unpaid obligations amounting to $37,760.47, and an apparent balance of $7,220.10, though it appears, as a matter of fact, that the administrator has no money whatever in his hands. There is annexed to this general account a special account against the minor

(now a major) Edna, wherein she is charged with $1,151.55, so that, crediting her with one-ninth of the apparent balance of $7,220.-10, or, say, $802.23, she appears to be a debtor, instead of a creditor, of the succession.

The aggregate of $37,760.47 mentioned above is made up in part of the following items, to wit:

| | |
|---|---:|
| Law charges, including notary, $400; appraisers, $250; future costs, $100; administrator's commission, $653.81 | $ 2,465 19 |
| Interest on mortgage, Philip street property, July, 1894, to July, 1899 | 312 00 |
| Taxes, insurance, and repairs, Philip street property, 1894 to 1899 | 289 66 |
| Insurance on stock, Tchoupitoulas street store, 1895 | 287 50 |
| License for business, 1895 | 70 00 |
| Note, J. M. Wiemann favor Chas. T. Wiemann | 300 00 |
| Bills for purchases, Magazine street store, 7/1/94 to 4/5/95 | 19,408 54 |
| Accounts owing for purchases of goods after 7/1/94 | 4,244 52 |
| Freight on goods from 7/1/94 to 4/5/95 | 887 65 |
| Salaries to employes Tchoupitoulas street store | 2,252 12 |
| Salaries to employes Magazine street store | 1,712 00 |

The special account against the minor Edna consists of two large items, the one, for $600, for one-third of the rental value (including the use of gas) of a portion of the Magazine street store used by her as a residence from 1894 to 1900, and the other for $551.55, made up of smaller items, mainly for board, clothing, medical and dental service, and instruction, but including one item, of $235, for a piano, and covering the period from November, 22, 1897, to March 7, 1900.

The opponent, in general terms, objects to all the items on the administrator's main account, and, in special terms, to the items upon the credit side of that account which are given above, as also to the item of $600 charged in the account against her; and she especially alleges that the administrator was without authority to carry on a commercial business for account of the succession, and repudiates all liability on her own behalf and on behalf of the succession with respect to disbursements made and bills contracted in connection therewith. Upon the trial of her opposition, she admitted the correctness of the charges aggregating $511.55, and it was shown without contradiction that she occupied the premises and used the gas as stated. It was also shown that she was employed for several years in the Magazine street store, and was paid for her services. There was considerable testimony given by the administrator in support or explanation of the items on the credit side of his account, and checks and stubs of checks were exhibited, which, it was admitted, showed the payment of those items, to the amount of $23,425.08. It was also admitted that cash payments had been made to the amount of $606.66, and that salaries had been paid as appears on the account. Eventually there was judgment maintaining the opposition of Edna Roberta Wiemann, directing the administrator to so amend his account as to show a balance of $15,861.30, and condemning him to pay the same to five of the heirs as follows: To Edna Roberta Wiemann, $2,621.26; to Mary Wiemann (now Mrs. Simpson), $2,621.26; to Mrs. Sturke, $2,172.26; to the estate of Charles F. Wiemann, $1,172.26; and to Mrs. Philip Peter (his wife), $2,172.26. This judgment was signed April 3, 1902, and some ten days later, no appeal having been taken, a writ of fieri facias issued, under which the property of the defendant in the writ was seized and sold, and there was realized by the seizing creditors the sum of $251.85. Edna Roberta Wiemann and Mrs. Simpson then brought suit against the sureties of the administrator for the balance due upon the judgment so rendered and partially executed, and whilst their suit was pending, to wit, in February, 1897, the administrator presented to the district court a petition alleging that R. J. Mainegra, one of his sureties, desired to withdraw from his bond; and, upon his furnishing other sureties, an order was made purporting to release Mainegra from all liability on said bond. Thereafter the judgment which had been obtained against the principal was offered in evidence in the suit against the sureties, who, lest they be concluded, appealed therefrom

devolutively, as did also the administrator. Edna Roberta Wiemann and her sister Mrs. Simpson have answered the appeal, praying that interest be allowed upon the amounts awarded them from April 5, 1895.

### Opinion.

The parties in whose favor the judgment appealed from was rendered, having partially executed the same, must be considered as having acquiesced therein, and cannot now, whether by appeal, answer to appeal, or otherwise, ask that it be amended. Upon the other hand, Edna Roberta Wiemann alone opposed the account; she alone appeared in court and prayed for a judgment against the administrator, and, save as to her opposition, the account was homologated by a final judgment, which has never been and is not now attacked. It seems evident, therefore, that the judgment subsequently rendered and now appealed from is erroneous, in that it condemns the administrator in favor of persons who did not appear in court to ask such relief, and who, for the purposes of the account as filed, were shut out by the judgment of homologation. Succ'n of Moise, 107 La. 717, 31 South. 990.

Considering the claim of Edna Roberta Wiemann, the only litigant in whose favor the judgment now before us for review could properly have been rendered, it is clear that she was not bound by the acts of the administrator and of her coheirs in carrying on a commercial business and in converting the property of the succession to their own use. Nor is she bound, with respect to those transactions, by anything which has since occurred. It is true that she prays for judgment against the administrator for $4,997.84, "being one-ninth of the assets which came into his hands, as shown by his account, saving and reserving her rights against the real estate, subject to such credits, if any there should be, shown to be due on the trial of the cause"; and the

learned judge a quo, in the calculation by which he arrives at the sum of $15,861.30 as the amount for which he holds the administrator liable to the five heirs in whose favor he gives judgment, starts with the gross amount ($44,980.57) with which the administrator debits himself, and credits that officer with a portion of the expenditures made for the purposes of the commercial business from which that fund was in part derived, but he rejects other items of the same character—as, for instance, those representing licenses and insurance and unpaid obligations for goods purchased. If, however, the whole fund should be dealt with as a succession asset, the whole of the expenditures and obligations made and incurred in its obtention should be taken into account. Thus if the administrator had, without authority, borrowed a sum of money, instead of acquiring it in a commercial business conducted without authority, and had included the sum so borrowed in the gross amount with which he debits himself, it is clear that such gross amount could not be distributed among the heirs without regard to the obligation incurred to the lender of the sum so borrowed and included. But whilst the opponent cannot be heard to insist upon participating in the distribution of money, as being the proceeds of succession property, whilst denying that the succession ever owned the property or is liable for the price, she is nevertheless entitled to her share of so much of the fund with which the administrator debits himself as represents property of which the succession was the undisputed owner. The account itself shows how much cash belonging to the succession was received by the administrator, and how much was realized by him from collections, and from sales, for account of the succession, of property included in the inventory, save with respect to the merchandise, and those items go to make up the total of $44,980.57 with which he is debited. According to the inventory, there also went into his

hands merchandise belonging to the succession to the value of $12,206.20, and as his account fails to distinguish the proceeds of that merchandise from other merchandise handled by him, he is to be held liable for its value as thus shown. For the purposes of the present inquiry, the debit side of the account may therefore be considered as making the following showing, to wit:

| | |
|---|---|
| Total amount received for account of the succession in cash, and from collections and sales, as specifically set forth........ | $ 9,806 06 |
| Value of merchandise belonging to the succession, as per inventory, included in sum total of receipts....................... | 12,206 20 |
| Total amount accounted for............. | $22,012 26 |

The difference between the total thus arrived at and that ($26,155.75) shown by the inventory is represented by the value of the real estate ($2,700), the life insurance ($1,560), loss in collection of book accounts and in sale of stock of Cosmopolitan Building & Loan Association, and in the apparent failure of the administrator to account for the household furniture, mules, wagons, and harness, and gas deposit, concerning which matters there is no issue presented by the opposition.

The opponent is therefore entitled to recover in this proceeding one-ninth of $22,-012.26, after deducting the debts due by the succession and by the decedent, and after deducting the amounts which were received by or disbursed for her during her minority, and for which she may properly be chargeable. Some difficulty presents itself in determining how far the charges which the administrator makes against the succession should be allowed. So far as the major heirs are concerned, it may well be that they are bound by all that was done, since it appears that the administrator acted with their concurrence and co-operation; but the opponent was a minor, who was incapable of consenting that any other course should be pursued than that prescribed by law, and, as to her, it not appearing that the administrator was

authorized by the court to pay out any money whatever, he can be allowed credit for such disbursements only as under the law he would have been bound to make if the succession had been regularly administered, to which may be added those which clearly appear to have been necessary or to have inured to the benefit of the heirs. Inasmuch as the decedent left two going stores, it might have been to the interest of the heirs, if proper authority could have been obtained, to continue the business, at least until the stock could be sold to advantage; but, so far as the opponent, who was then a minor, was concerned, such authority was not, and perhaps could not have been, obtained, and, as no advantage resulted to her from the continuance of the business after the death of her father, so she cannot be burdened with the charges incident thereto. If, however, the business had not been continued, the stock in trade could not have been disposed of instantly, and certain expenses must needs have been incurred in the interest of the opponent as well as of her coheirs; and as the Magazine street store and the lot used as a warehouse were occupied under leases which presumably did not expire before the 1st of October, and some delay must, in any event, have ensued before the merchandise could have been sold, during which it must have required some attention, we are of opinion that the administrator may fairly be credited with a portion of the disbursements made by him up to that date. In the case of the Philip street property, it perhaps should have been sold earlier; but, as the administrator collected $958 of rents whilst the title remained in the succession, and expended considerably less than that on the property, there can be no reason why he should not be charged with the rents and credited with the expenses.

With this explanation, we conclude that the following deductions should be made from the gross amount of $22,012.26 with

which, as between him and the opponent, the administrator is to be charged, to wit:

| | |
|---|---|
| Funeral charges | $ 188 35 |
| Law | 1,506 31 |
| Expenses of last illness | 9 00 |
| Assessment on stock, Interstate Fire Insurance Company | 127 00 |
| Interest on mortgage, Philip street property | 312 00 |
| Taxes, insurance, and repairs, Philip street property | 289 67 |
| Taxes of 1894 on stock in trade, 837 Magazine | 21 70 |
| Rent of store, July 1 to October 1, 1894 | 165 00 |
| Taxes of 1894 on stock in trade and building 769 Tchoupitoulas | 123 00 |
| Incidental expenses, July 1 to October 1, 1894, 769 Tchoupitoulas | 32 43 |
| Rent of lot Tchoupitoulas street, July 1 to October 1, 1894 | 30 00 |
| Pro rata (three-ninths) of bills of Grasser & Reinhard, Schindler, Cahill, Kuhn, Young, Smith & Meyer, covering 9 months, from July 5, 1894, to April 5, 1895 | 117 48 |
| Bills due by decedent | 3,710 94 |
| Repairs to building on Tchoupitoulas street | 64 52 |
| Gas bill, 837 Magazine street, August and September, 1894 | 15 20 |
| Allowance for employés for handling merchandise to October 1, 1894 | 300 00 |
| Total | $7,012 60 |

For the purposes of this opposition, therefore, the administrator's account should be held to stand as follows:

| | |
|---|---|
| Total amount to his debit | $22,012 26 |
| Deductions as above | 7,012 60 |
| Balance due | $14,999 66 |
| Share of opponent therein, being one-ninth | $1,666 62 |
| From which is to be deducted the amount already received by her | 511 55 |
| Balance due opponent | $1,155 07 |

It may be thought that the opponent should be charged with her proportion of the rental value of the premises occupied by her, and of the cost of the gas there consumed; but it does not appear that it was at any time understood that such a charge was to be made, and the administrator had no right to encourage an expense which, for aught that we know, she might have saved.

For the reasons thus assigned, it is ordered, adjudged, and decreed that the judgment appealed from be annulled and avoided in so far as it makes awards in favor of Mary B. Wiemann (wife of John Simpson), Isabella Wiemann (wife of W. F. Sturke), estate of Charles F. Wiemann, and Elizabeth Wiemann (wife of Philip Peter), and that it be amended by reducing the amount awarded to the opponent, Edna Roberta Wiemann, from $2,621.26 to $1,155.07, and that in all other respects it be affirmed; the appellees to pay the costs of the appeal.

The Chief Justice absent on account of sickness.

### On Application for Rehearing.

### (April 11, 1904.)

PER CURIAM. Counsel for Edna R. Wiemann (Mrs. Oplatek) accepts the conclusion of law reached by the court, but suggests that, inasmuch as the judgment rendered purports to allow the administrator certain necessary disbursements made by him prior to October 1, 1894, and inasmuch as the account was not filed until January, 1902, the items under the head of "Law Charges," aggregating $1,707.11, should be reduced in the proportion of about one-half.

It is also suggested that, in arriving at the total of $22,012.26, with which the administrator is charged, the court erred in omitting certain items, and that the debit should be $22,340.89. The answer is (1) that the ruling referred to has no application to law charges, representing the cost of administering the succession, which may have been as legitimately incurred after the 1st of October, 1894, as before; (2) that the opposition presented no issues as to the failure of the administrator to charge himself with the assets omitted from his account; and (3) that the judgment appealed from fixed the amount of the law charges at $1,506.31, and failed to charge the administrator with the omitted items now referred to, and that judgment, having been acquiesced in and partly executed by the opponent, cannot be amended for her benefit on an appeal taken by the administrator.

Rehearing refused.