(71 South. 492)

No. 21588.

Succession of HAWKINS.

(March 6, 1916. On Application for Rehearing, April 24, 1916.)

*(Syllabus by the Court.)*

1. ADOPTION ⊗⇒21 — RIGHTS OF ADOPTED CHILD—INHERITANCE—"FORCED HEIR."

In the absence of other forced heirs, an adopted child becomes a forced heir, entitled to the légitime of one-third of the estate of the foster parent.

[Ed. Note.—For other cases, see Adoption, Cent. Dig. §§ 35, 36, 38–40; Dec. Dig. ⊗⇒21.

For other definitions, see Words and Phrases, First and Second Series, Forced Heir.]

2. GIFTS ⊗⇒41—GIFTS INTER VIVOS—RIGHT TO REVOKE—WILLS.

As a donation inter vivos is irrevocable, the donor's request, in his last will and testament, that the donee divide with other legatees the property previously donated to her, is only a precatory suggestion having no legal force or effect.

[Ed. Note.—For other cases, see Gifts, Cent. Dig. § 20; Dec. Dig. ⊗⇒41.]

3. JUDGMENT ⊗⇒649—EX PARTE JUDGMENT—RES JUDICATA—GUARDIAN AND WARD.

An ex parte judgment, obtained by a tutor for the benefit of his own children and against the interest of another of his minor wards, probating a will, approving the account of the tutor as testamentary executor, or sending the minor children into possession of the estate, has not the force of res judicata.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1161; Dec. Dig. ⊗⇒649.]

4. EXECUTORS AND ADMINISTRATORS ⊗⇒93(1) — GUARDIAN AND WARD ⊗⇒62 — MANAGEMENT OF MERCANTILE BUSINESS—DUTY TO ACCOUNT.

A testamentary executor or tutor has no right to carry on indefinitely a mercantile business for the account of his minor ward. Where the tutor conducts a mercantile business with the stock of merchandise inherited by his ward, he must account for the value of the goods or merchandise belonging to the minor, with legal

interest from the date on which he took possession of it.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 407, 408; Dec. Dig. ☞93(1); Guardian and Ward, Cent. Dig. §§ 288–293; Dec. Dig. ☞62.]

5. GUARDIAN AND WARD ☞62—TUTORSHIP—USE OF WARD'S PROPERTY — LIABILITY OF GUARDIAN.

A tutor who has carried on a commercial business in a building belonging to his minor ward must pay his ward rent for the premises when it is adjudged that the business was carried on for the tutor's personal account.

[Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. §§ 288–293; Dec. Dig. ☞62.]

6. EXECUTORS AND ADMINISTRATORS ☞511(3)—GUARDIAN AND WARD ☞162—TUTORSHIP—FINAL ACCOUNT—COSTS.

The costs of court incurred in obtaining a final account from a testamentary executor and tutor must be borne by him personally when due to his illegal method of administration and his unwillingness to render an account.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 2260–2264; Dec. Dig. ☞511(3); Guardian and Ward, Cent. Dig. §§ 538, 539; Dec. Dig. ☞162.]

Appeal from Civil District Court, Parish of Orleans; Porter Parker, Judge.

In the matter of the Succession of John Armand Hawkins. Rules by Istella Flannery Hawkins, wife of Merlin J. Bellau, against Charles Hawkins, testamentary executor, testamentary tutor, and natural tutor. From the judgment, Charles Hawkins and others appeal. Modified, affirmed, and rehearing denied.

James B. Rosser, Jr., of New Orleans, for appellant Charles Hawkins. E. Howard McCaleb, of New Orleans, for appellants Lotta Hawkins Ramsey and Lillian Hawkins. Titche & Rogers, of New Orleans, for appellee Istella Flannery Hawkins Bellau.

O'NIELL, J. On the 20th of May, 1905, John Armand Hawkins adopted as his child an orphan girl named Imelia Stella Flannery, then 9 years of age. Having no children, he gave her the right to bear his name and to become the sole heir to his estate.

On the same day he made an authentic act of donation to her of a house and two lots on Cleveland avenue, in New Orleans.

Mr. Hawkins made his last will and testament on the 2d of May, 1910, and died on the 5th of that month, leaving no other forced heir than this adopted daughter, whom he called, in the will, Istella Flannery Hawkins. He bequeathed to her and to the four children of his nephew, Charles Hawkins, namely, Lotta, Lillian, Charles, Jr., and Milton Hawkins, share and share alike, the property in which he had conducted a curio store on Royal street, in New Orleans, and the contents of the store, expressing the wish that the legatees sell out the contents of the store at their leisure. He also expressed the wish that Istella Flannery Hawkins would divide with the above-named four children of his nephew, so as to make them all owners in common of the Cleveland avenue property, which he had previously donated to his adopted daughter and which he wished to be known as the homestead and to be the residence of his five legatees. He expressed the wish that the real estate on Royal street, as well as that on Cleveland avenue, be held by his five legatees at least 20 years. He appointed his nephew, Charles Hawkins, executor of his will, with full seisin of the estate and expressly exempted him from furnishing a bond. The testator also appointed his nephew, Charles Hawkins, testamentary tutor of Istella Flannery Hawkins. The testator concluded by bequeathing all of his property to the above-named four children of his nephew and to Istella Flannery Hawkins, making them his five universal legatees.

The testament was admitted to probate on the petition of the testator's nephew, Charles Hawkins, who was confirmed and qualified as testamentary executor on the 10th of May, 1910. The inventory of the estate was as follows, viz.:

Contents of store on Royal street.. $18,599.06
Contents of residence on Cleveland
   avenue ...................... 451.05
Cash in bank.................... 2,956.83
Promissory note................. 89.00
Cleveland avenue property........ 4,000.00
Store property on Royal street..... 40,000.00

    Total ..................... $66,095.94

On the 1st of June, 1910, before having qualified as tutor, Charles Hawkins filed an account as testamentary executor, debiting himself with the value of the estate appearing on the inventory, $66,095.94, and crediting himself with the following items, viz.:

Funeral charges (itemized)......... $ 616.10
Expense of last illness (itemized).... 110.00
Law charges (itemized)............. 7,659.29
Inheritance tax................... 152.29
G. A. Howerton, check and protest
   fee ........................... 302.50
Ordinary debts (itemized)........... 113.73

    Total liabilities................ $8,953.91

There appears to be an error of 49 cents in the addition of the liabilities; the sum of which is put down on the account as $8,-953.42, leaving the net value of the estate $57,142.52, instead of $57,142.03.

Notice of the filing of the executor's account was published in the English language on the 1st, 5th, and 10th of June, 1910, and in French on the 2d, 6th, and 11th of that month; and, on the testimony of the executor only, stating generally that the items appearing on the account were correct, a judgment was rendered in the district court on the 14th of June, 1910, approving the account and ordering that a distribution be made accordingly.

On the 16th of June, 1910, Charles Hawkins petitioned the court to have an inventory and appraisement made of the property belonging to the minor child, Istella Flannery Hawkins, in order that he might qualify and be confirmed as her tutor. In making this inventory, the interest of Istella Flannery Hawkins was put down as one-fifth of each item of property appearing on the original inventory and was appraised at exactly one-fifth of the value at which each item was originally appraised.

On the petition of Charles Hawkins, as testamentary tutor of Istella Flannery Hawkins and as natural tutor of his own four children (their mother being alive), an ex parte judgment was rendered on the 30th of June, 1910, ordering the five minor children sent into possession of the estate of John Armand Hawkins, and especially of the real estate on Royal street and Cleveland avenue, as the universal legatees and as owners in the proportion of one-fifth to each.

It will be observed that the debts of the succession, consisting principally of law charges, amounted to $8,953.91, and that there was only $2,956.83 cash on hand. To pay the balance of $5,997.08, the tutor mortgaged the Royal street property, with the permission and approval of the district court, and borrowed $6,000 on the 5th of July, 1910, on a note bearing interest at 6 per cent.

Instead of selling out the stock of merchandise in the Royal street store, the tutor continued the business, conducting it in the name of "Estate of John Armand Hawkins," and replenishing the stock as it was sold in the ordinary course of business. He was not discharged from the trust of testamentary executor, and did not render an account as tutor of the minor, Istella Flannery Hawkins.

When she was more than 20 years of age, that is, on the 19th of March, 1914, Istella Flannery Hawkins married Merlin J. Bellau. And, a month later, she obtained an order from the district court commanding Charles Hawkins to file an account of his administration and gestion as testamentary executor, or show cause why he should not render the account. Charles Hawkins appeared in his capacity of testamentary tutor and urged, as an exception to the authority or capacity of his ward to demand an ac-

counting from him, that she had married without his consent, during her minority. He also appeared individually and pleaded as an exception that the account rendered on the 1st of June, 1910, was a final account of his administration as executor, and that the judgment approving it, dated the 14th of June, 1910, was binding upon his ward. He again appeared individually and pleaded that the succession of John Armand Hawkins was closed by the judgment rendered on the 23d of June, 1910, sending Istella Flannery Hawkins and the four children of Charles Hawkins into possession of the estate as universal legatees and owners in the proportion of one-fifth to each of them, and that that judgment, as well as the judgment probating the will, was conclusive and binding upon his ward. The district judge overruled the foregoing pleas or exceptions, and peremptorily ordered Charles Hawkins to file an account as testamentary executor; in response to which order he filed a copy of the account which he had rendered on the 1st of June, 1910, showing only the assets and liabilities of the succession on that date. He was then ordered to show cause why he should not be held in contempt for evading the order of the court to render a detailed account of his administration and gestion; in response to which he filed an account of his administration as testamentary tutor from the date of the death of John Armand Hawkins to the date of the marriage of Istella Flannery Hawkins; that is, to the 19th of March, 1914.

Mrs. Istella Hawkins Bellau filed oppositions to the accounts rendered by the executor and tutor, contesting each and every item charged to her. Thereafter she filed a petition, praying for citation upon Charles Hawkins, individually, and as executor and as tutor of his minor children, Charles Hawkins, Jr., and Milton Hawkins, who were yet minors, and upon Lillian Hawkins, who had come to the age of majority, and upon Lotta Hawkins Ramsey, who had married L. H. Ramsey, and upon the husband to appear and authorize her. The prayer of the petition was that all of the movable property of the succession be judicially sequestered; that the petitioner be recognized as the only forced heir of John Armand Hawkins, and, as such, entitled to one-third of his estate as her légitime; that the judgments probating the will, approving the executor's original account and recognizing each legatee to be the owner of one-fifth of the estate, be decreed null and of no effect; that she (Mrs. Bellau) be recognized as, and decreed to be, the sole owner of the Cleveland avenue property, by virtue of the donation made to her by John Armand Hawkins during his lifetime; that the mortgage of $6,000 on the Royal street property be decreed null and of no effect; and that she (Mrs. Bellau) recover from Charles Hawkins, individually, and as testamentary executor and testamentary tutor, $3,000 as the value of a house which, she alleged, Charles Hawkins had caused to be demolished and removed from the Cleveland avenue property, and recover rent for the Royal street store at the rate of $300 a month. The petition was put at issue by answers and by a plea of res judicata, based upon the judgments, probating the will, approving the original account of the executor and sending the legatees into possession of the estate. The property of the succession was not judicially sequestered. On the issue tendered by the foregoing pleadings, the case was taken up for trial; and the district judge found the accounts so complicated, and the vouchers and data so meager, that he appointed an expert accountant to audit the books and accounts of the testamentary executor and tutor, and to report to the court. On the auditor's report and the evidence adduced, judgment was rendered in favor of Mrs. Bellau and against her tutor

for $1,881.89, with interest at 5 per cent. per annum from the date of the judgment. The judgment recognized Mrs. Bellau to be the sole owner of the Cleveland avenue property and of one-third interest in the Royal street property, free from any debt or incumbrance. All other demands and oppositions of Mrs. Bellau were rejected and dismissed. The fee of the expert accountant was fixed at $500, which, with all other costs, Charles Hawkins was condemned to pay. Charles Hawkins, as testamentary executor, as testamentary tutor, and as natural tutor of his two minor children, appealed from the judgment. Mrs. Lotta Hawkins Ramsey and Miss Lillian Hawkins also appealed. Mrs. Bellau has filed an answer to the appeal of her tutor, praying that the judgment be amended in these respects, viz.: That the amount which he was condemned to pay to her be increased to $12,780.52; that she be allowed interest on the value of her property from the date her tutor took possession of it; and that she be allowed her share of the rental value of the Royal street property during the time it was occupied by the tutor as a store. She complains that the judgment is founded upon the theory that the tutor had a right to carry on the mercantile business for the account of his wards, whereas he should have been condemned to account for the full value of the property he received as tutor. She also complains that all items charged on the tutor's account against her that were not proven should have been disallowed, and that the testamentary executor should not have been allowed a commission as such, because he did not obtain a discharge, and should not be allowed a commission, as tutor, because he did not faithfully administer the affairs of his ward.

## Opinion.

[1] As John Armand Hawkins had no forced heirs, his act of adoption of the present appellee conferred upon her all of the rights of a legitimate child. R. C. C. 214; Vidal v. Commagere, 13 La. Ann. 516. As such, she became a forced heir to the extent of one-third of his estate. R. C. C. 1493. Hence the testator could not and did not legally dispose of more than two-thirds of his estate to the children of his nephew, Charles Hawkins, to the prejudice of the testator's adopted child and forced heir. Succession of Hosser, 37 La. Ann. 839; Succession of Vollmer, 40 La. Ann. 593, 4 South. 254; Succession of Teller, 49 La. Ann. 282, 21 South. 265.

[2] As the donation made by John Armand Hawkins of his Cleveland avenue property to his adopted daughter was irrevocable (R. C. C. 1468), his request in his will that she divide or share that property with the other legatees was only a precatory suggestion of no legal force or effect.

[3] From the foregoing observations, the testamentary executor, Charles Hawkins, knew, or must be held to have known, that the Cleveland avenue property belonged to Istella Flannery Hawkins, and that she inherited also an undivided third interest in all of the property of the succession of John Armand Hawkins. Notwithstanding his knowledge of the facts controlling the title of all of this property, the testamentary executor caused the Cleveland avenue property to be put upon the inventory of the estate of John Armand Hawkins, and now seeks to hold his ward bound by the ex parte judgment, rendered when she was a minor and was not represented by a tutor, approving his account on which appeared the Cleveland avenue property as a part of the estate of John Armand Hawkins. He invokes also the judgment probating the will, as res judicata and as preventing his ward from demanding that the bequest to the other legatees be reduced to the disposable portion. And he invokes, in support of his plea of res judicata, the ex parte judgment which

he procured in the interest of his own children and against the interest of his other ward, decreeing the interest of the latter child to be only one-fifth and the interest of his own children to be four-fifths of the Cleveland avenue property, which belonged entirely to Istella Flannery Hawkins, and of the remaining property, in which she owned one-third interest. There is no merit whatever in the appellant's plea of res judicata. See Succession of Wiemann, 106 La. 387, 30 South. 893, and Miguez v. Delcambre, 109 La. 1090, 34 South. 99. In the case of McNeely, Tutrix, v. McNeely, Executor, 50 La. Ann. 837, 24 South. 338, it was held that a person having knowledge of the existence of a child born in wedlock, though born after a separation of the parents from bed and board, must be held to have knowledge of the rights of the child.

The accounts rendered by the testamentary executor and tutor in this case were made out on his theory that his ward, Istella Flannery Hawkins, was compelled to share her Cleveland avenue property equally with the four children of her testamentary tutor, and that she was not a forced heir, or had lost her rights as a forced heir, to the estate of John Armand Hawkins. In this respect, the testamentary executor and tutor, perhaps, observed the wishes of John Armand Hawkins, as expressed in his last will and testament. These expressions, however, were not binding upon the forced heir; hence she has the right to repudiate her tutor's observance of them.

[4, 5] The accounts of the testamentary executor and tutor were also kept and finally rendered on the erroneous idea that the tutor had a right to continue the mercantile business with the property of his ward and for her account. The carrying on of the business indefinitely by replenishing the stock of merchandise was not justified under a reasonable construction of the clause in the testament, "they are to sell out at their leisure" the contents of the store on Royal street. The continuance of the business indefinitely by a tutor for the account of his minor ward is an illegal method of administration. In Succession of Wiemann, 112 La. 293, 36 South. 354, where an administrator, with the consent of all of the heirs, continued to carry on the commercial business of which the decedent had been the proprietor, it was held, as to a minor heir, that the administrator was only entitled to receive credit on his account for such expenditures as should have been made if he had settled the succession according to law.

The tutor's account discloses that his gross sales of merchandise, from the 6th of May, 1910, to the end of March, 1914, amounted to $41,175.29, and that the expense of carrying on the business during that period including the invoices for merchandise purchased in replenishing the stock, amounted to $44,261.70, showing a net loss of $3,086.41 in the business, assuming that the tutor has not increased the stock of merchandise at the expense of his wards. As the tutor did not furnish an inventory of the stock of merchandise on hand at the time he rendered his account, there is no means of determining whether it is worth more or less than the value of the merchandise of which he took possession in May, 1910. And, from the fact that he had sold, in the regular course of business, during the first 3 years and 11 months, 2¼ times as much stock as he had received in value from the succession of John Armand Hawkins, it may be assumed that there is now very little, if any, of the original stock of merchandise on hand. An inventory made on the 1st of October, 1914, showed the value of the stock on hand at that time to be only $12,721.12; that is about two-thirds of the value of the old stock left by the decedent.

The showing of an apparent loss in the

business is due to certain errors in the tutor's method of accounting, as is explained in the report of the auditor. There are several instances in which duplicate charges were made, the three largest of which amounted to $13,500. The errors found by the auditor in the tutor's account show that the business made a profit exceeding $7,000 during the first four years, although the auditor explained that it was impossible to obtain an accurate statement of the business from the vouchers and data furnished.

The judgment appealed from is apparently based upon the theory that Mrs. Bellau is entitled to one-third of the net profits of the business conducted by her tutor during her minority. Our conclusion is that she is entitled to an accounting for her third interest in all of the movable property of the succession of which her tutor took possession; and we shall recast the account accordingly.

The tutor is not entitled to credit on his final account for the debts shown on his original account as executor, amounting to $8,953.91, because they were offset with the cash in bank, $2,956.83, and the proceeds of the loan of $6,000, for which the minors' property remains mortgaged. It also appears that the promissory note of $89 appearing on the original inventory was not collectible; hence this item need not be considered. The other movable property on the original inventory was appraised at $19,050.11; for one-third of which, that is, $6,350.04, the tutor must account to Mrs. Bellau.

The account shows a list of expenditures made for the minor, Istella Flannery Hawkins, amounting to $5,605.98, to which must be added $15.73, being the difference between one-third and one-fifth of certain court costs and two law fees, amounting to $118. And from the total sum, $5,621.71, must be deducted the following items, viz.:

| | |
|---|---|
| One-fifth of mortgage note and interest | $1,458.00 |
| Amount reserved for court costs | 100.00 |
| 10 per cent. commission on gross sales | 823.50 |
| Proceeds of sale of material from Cleveland avenue property | 120.00 |
| | $2,501.50 |

Deducting the net amount of expenditures, $3,120.21, from the $6,350.04 to be accounted for, leaves $3,229.83 to the credit of Mrs. Bellau. She is also entitled to interest at 5 per cent. per annum on $6,199.68, the value of her third of the stock of merchandise appropriated by her tutor to the business conducted by him, from the 6th of May, 1910; and she is entitled to one-third of the rental value of the Royal street store from that date. McNeely v. McNeely, 50 La. Ann. 824, 24 South. 338. The evidence shows that $200 or $225 per month would be a reasonable charge for the rent of this building; and we have concluded to allow one-third of the smaller amount, that is, $66.66⅔ per month.

There is no evidence to support the contention that the building demolished and removed from the Cleveland avenue property was worth more than the proceeds of the sale of the material, for which we have given Mrs. Bellau credit.

The tutor is entitled to credit for one-third of the interest paid by him on the mortgage note of $6,000 at 6 per cent. per annum from the 5th of July, 1910. He is also entitled to reimbursement from Mrs. Bellau for one-third of the taxes paid by him on the real estate on Royal street and for all of the taxes paid by him on the Cleveland avenue property. But, as it is not possible for us to separate the amount of taxes paid on the real estate from the amount paid on the stock of merchandise, we can do no more than reserve the tutor's right to recover the amount of taxes paid by him on the real estate belonging to Mrs. Bellau.

[6] As the costs incurred in these proceed-

ings are due to the illegal method of administration and the unwillingness of the tutor to render an account to his ward, he should pay the costs.

For the reasons assigned, it is ordered that the judgment appealed from be amended by increasing the amount which Charles Hawkins is condemned to pay to Mrs. Istella Hawkins Bellau to $3,329.83; by requiring her to pay $2,000 of the debt secured by mortgage on her third interest in the Royal street property; by condemning Charles Hawkins to pay to Mrs. Bellau interest at 5 per cent. per annum on $6,199.68 from the 6th of May, 1910, until this judgment is paid, and rent at the rate of $66.66⅔ for her third interest in the Royal street property from the 6th of May, 1910, and as long as he occupies the premises; by allowing him credit for the interest paid by him at 6 per cent. per annum on $2,000 from the 5th of July, 1910; and by reserving whatever right of action he has for reimbursement for taxes paid by him on the real estate belonging to his ward. As thus amended, the judgment appealed from is affirmed at the cost of Charles Hawkins.

## On Applications for Rehearing.

PER CURIAM. The amount which the tutor was condemned to pay Mrs. Bellau is $3,-229.83, as shown in the above opinion. The figures $3,329.83 in the decree contain a clerical error, which is now corrected so as to read $3,229.83.

The decree in this case is also corrected so as to allow Mrs. Bellau legal interest on $3,229.83 from the 6th of May, 1910, until paid, and average interest, that is, one-half of the legal interest, on $2,969.85 from the 6th of May, 1910, to the 19th of March, 1914.

Mrs. Bellau has no further claim on the stock of merchandise received by her tutor. The applications for rehearing are denied.