ROGERS, J.
 

 In the month of August, 1919, for a debt due it by Manuel Sales Diaz, of Campeche, Mexico, the Compañía Comercial Mexicana seized, by attachment process issued by the civil district court, of the city of New Orleans, the schooner or pilot boat’ Cuatro Hermanos, as the property of its debt- or. The captain of the seized boat filed an affidavit setting forth that it was owned by the minor children of Manuel Sales Diaz. The sheriff thereupon called upon the attaching creditor to release the seizure or to furnish an indemnity bond. The attaching creditor elected to maintain the seizure and furnished bond, which was signed by the United States Fidelity & Guaranty Company. A petition of intervention was then filed in the attachment proceedings on behalf of the minor children of Manuel Sales Diaz. On the trial of this intervention, the interveners produced a copy of a document on file in Campeche in which it was declared by Diaz that his children (aged one and four years, respectively)' had received various presents of money from relatives, which money he had used in his. business to avoid bankruptcy, and that, by
 
 *30
 
 reason of the indebtedness thus incurred, he transferred to his children certain property, including the schooner in question. The purported transfer was made in July, 1917. The document appearing regular on its face, the legal title to the boat was declared by the court to be in the infant children of Diaz, and it was accordingly released from seizure. The attachment was levied on August 25, 1919, and the judgment releasing it was rendered on October 23,1919. However, the vessel did not clear from New Orleans until December 4, 1919. Apparently, the alleged owners of the boat, made no attempt to bond the attachment, and the vessel remained in charge of the sheriff until it was released. During all of this time, the owner maintained the full crew on board, instead of returning them to Mexico, and they continued on board after the release of the seizure until the vessel left New Orleans, nearly two months thereafter.
 

 This _suit is a sequel to the litigation in the attachment proceedings. It was originally brought by Manuel Salqs Diaz as the natural tutor of his two minor children against the Compañía Comercial Mexicana, plaintiff in these proceedings, and the United States Fidelity & Guaranty Company, surety on the bond, in solido, to recover damages in the sum of $15,664.13, with interest, for the alleged illegal attachment. On an exception to the jurisdiction of the court, the Compañía Comercial Mexicana was dismissed from the suit, leaving the surety company as the sole defendant.
 

 The defense of the surety company was that the minor plaintiffs were not damaged by the seizure, for the reason that the vessel was operated neither by them nor for them, but by Manuel Sales Diaz individually, or as a firm of that name, composed of four brothers of the Diaz family. This defense prevailed, and plaintiffs’ suit was dismissed. The appeal is by plaintiffs from that judgment.
 

 The facts show that Elbert & C.o., of New York City, for the convenience of the business it was doing with Manuel Sales Diaz, organized the Compañía Comercial Mexicana, furnishing practically all of the capital for the company. In May, 1916, Jose Diaz, one of the brothers, who was acting as the agent for Manuel Sales Diaz in New York City, informed Elbert of the desire of his principal to purchase a small vessel for cruising and trading along the Mexican coast. At his request, Elbert went to the city of Mobile, and there purchased a schooner, or pilot boat, 79 feet long, named the Sir Knight which had been selected by Diaz. The entire purchase price of $5,000 was paid by Elbert and charged to the account of Manuel Sales Diaz. Elbert delivered the vessel to the Mexican crew which was sent to Mobile, and it was immediately placed under the Mexican flag, its name being changed to Cuatro Hermanos. The business relations between the Compañía Comercial Mexicana and Manuel Sales Diaz continued until the latter part of the year 1918. During this period the schooner Cuatro Hermanos was used in aid of the business carried on between the parties. Diaz was always largely indebted to the Mexican company. The amount of the indebtedness was at one time fixed by compromise at $3,800', which amount, however, remained unpaid. Later, a further compromise, carrying a substantial reduction, was offered Diaz, without result. Neither the business transactions nor the operation of the schooner proved profitable for the parties. At no time did Diaz inform the Mexican company that he had transferred the boat to his children, but, on the contrary, always held himself out as the owner of the vessel. He did this on the bills of lading and on his letterheads, and, on one occasion, responding to the efforts of Elbert, on behalf of the Mexican company, he offered to carry a load of freight, without charge, from Mexico to New Orleans, referring in his letter to the
 
 *32
 
 vessel as “my schooner.”' It was only after the Mexican company was unable to obtain any settlement whatever of its indebtedness that the attachment proceedings were instituted, at its instance, in the month of August, 1919.
 

 The trial judge, after reviewing the facts, declared that:
 

 “In the absence of proof to the contrary the presumption of law is juris et de jure that the law of Mexico in relation to minors is the same as the law of Louisiana.
 

 “If it be true that the father of these minors embezzled moneys belonging to his infant children and made a dation en paiement of this schooner to them (purchase price of which has never been paid) then it became a movable belonging to his minor children, and he was not authorized to hold this movable property indefinitely under article 338 of our Civil Code, but, on the contrary, it was his duty to sell it within a month, unless authorized by the Probate Judge to preserve it in kind. O. 0. arts. 338, 1168, 1169.
 

 “It is equally clear, under our law, that unless-authorized by the court on the advice of a family meeting the tutor had no right to carry out any business of any nature or kind for the benefit of his minor children where losses could possibly be incurred. Payne & Harrison v. Scott, 14 La. Ann. 760; Urquhart v. Scott, 12 La. Ann. 674; Union Bank v. Forstall, 41 La. Ann. 113, 6 So. 32; Succession of Hawkins, 139 La. 228, 71 So. 492.”
 

 And the trial judge therefore reached the conclusion that, if any losses or damages were incurred in the operation of the schooner, they could not fall on the minors, but must fall upon their father and natural tutor; that the minors, having suffered no damages by the seizure, can recover none. Hence he dismissed plaintiffs’ suit.
 

 We think the conclusion reached by the trial judge is correct. It cannot be denied that a ship or vessel is a movable (Civ. Code, art. 637); and, under Civ. Code, art. 338, the tutor, within a month after the inventory is closed, must cause the movable effects to be sold, unless under certain contingencies he be permitted by the court to preserve them in kind. No such authority is shown here. And in the Succession of Hawkins, 139 La. 228, 71 So. 492, this court expressly held that a tutor was without right to conduct a mercantile business with the property of his ward and for her account, and that his action in doing so was an illegal method of administration.
 

 In the case at bar, the tutor alone is responsible to his minor children if they have suffered any loss by reason of his illegal retention and use of their property. If he were permitted a recovery in this suit, to the extent of the amount of such recovery, he would be able to shift his responsibility to the defendant surety company. We do not think he is entitled to this relief. He has disregarded the law, and cannot invoke its protection against his own wrongdoing.
 

 For the reasons assigned, the judgment appealed from is affirmed.
 

 THOMPSON, J., takes no part.