152 So.2d 29

Succession of Mrs. Grace Zelie DANNEEL, Widow of Dr. George W. REMBERT.

No. 46378.

March 25, 1963.

Rehearing Denied April 29, 1963.

Edward J. Villere, New Orleans, for applicant.

Posey R. Bowers, W. Blair Lancaster, Jr., Thomas Barr III, New Orleans, for respondent.

HAWTHORNE, justice.

Mrs. Grace Zelie Danneel, widow of Dr. George W. Rembert, died on February 7, 1959, and the Whitney National Bank of New Orleans qualified as testamentary ex-

ecutor. On June 10, 1960, the executor in these succession proceedings filed a tableau of distribution, styled by it "first provisional account", listing certain debts which it proposed to pay including a proposed payment to Dr. Robert Bernhard, Sr., of $5420.00 for professional services rendered to the decedent. Dr. Bernard filed opposition to this tableau, contending that he was a creditor of the decedent for professional services in the sum of $7100.00 and should be paid this amount, and that the account should be amended accordingly. Before the filing of this tableau Dr. Bernhard had presented to the executor his first itemized statement of the charges for professional services rendered to the decedent from July 22, 1953, to February 7, 1959. In listing Dr. Bernhard as a creditor for $5420.00 the executor took the position that $1680.00 of the $7100.00 claimed had prescribed.[1]

The district court dismissed Dr. Bernhard's opposition and approved and homologated the tableau as filed by the executor. The Court of Appeal, Fourth Circuit, amended the judgment of the district court by increasing the award to Dr. Bernhard from $5420.00 to $5430.00 and affirmed the judgment in all other respects.[2] See La. App., 144 So.2d 664. On application of Dr. Bernhard this court granted a writ of certiorari.

The pertinent facts here involved are set out in the opinion of the Court of Appeal, and it is necessary for us to give only a brief summary of them. On March 26, 1958, about a year before Mrs. Rembert's death, she was adjudged an interdict, and on September 17, 1958, about six months after her interdiction, the Whitney National Bank was appointed as her curator and duly qualified. The curator on January 29, 1959, filed what it styled its "first provisional account" setting out the bills to be paid, which was approved and homologated by the district judge on the same day it was filed. Dr. Bernhard, relator, was placed on this account for the full amount of his claim, $7100.00, but before any of these claims were paid, the interdict, Mrs. Rembert, died leaving a *solvent* estate.

Her testamentary executor, Whitney National Bank, filed its first tableau of distribution on June 10, 1960, on which the executor listed a proposed payment to Dr. Bernhard, as stated previously, of $5420.00, on the theory that $1680.00 of his itemized bill for $7100.00 had prescribed. The executor conceded that prescription running

1. Under Article 3538 of the Civil Code one of the actions which are prescribed by three years is "That of physicians, surgeons and apothecaries for visits, operations and medicines."

2. According to our calculations the executor and the district court were correct in concluding that Dr. Bernhard was due only $5420.00. We cannot, however, correct the Court of Appeal's amended judgment since the executor did not apply for writs from that judgment.

on this account was interrupted by the filing of the provisional account in the curatorship on January 29, 1959, and proposed to pay all items charged to the decedent for a period of three years prior to this date amounting to $5380.00, plus additional charges of $40.00 incurred after this date and before the decedent's death, or a total of $5420.00.

The Court of Appeal was correct in holding that the filing of the provisional account by the curator interrupted prescription running on Dr. Bernhard's bill, La.Civ. Code Art. 3520, and that the filing of this account could only interrupt the running of prescription and could not operate to waive accrued prescription. La.Civ.Code Art. 354; see Succession of Driscoll, 125 La. 287, 51 So. 200; Succession of Romero, 31 La.Ann. 721.

We granted writs in this case so that we might determine whether the pronouncement by this court, first made in In re Phoenix Building & Homestead Ass'n, 203 La. 565, 14 So.2d 447, and repeated in Liquidation of Canal Bank & Trust Co., 211 La. 803, 30 So.2d 841, that judgments homologating accounts are final and have the authority of the thing adjudged, had any

application here in view of the homologation by the court of the curator's provisional account on which Dr. Bernhard was listed as a creditor for $7100.00.

Our study of the codal provisions and the jurisprudence leads us to conclude that the judgment homologating this curator's account could not have the force of the thing adjudged.

Article 356, found in the Civil Code in Book I, Title VIII, "Of Minors, Of Their Tutorship And Emancipation",[3] requires:

"The tutor is bound to render an annual account of his administration, reckoning from the day of his appointment. This account shall be rendered contradictorily with the undertutor.

"The judgment homologating the account shall be *prima facie* evidence of the correctness of the account homologated, in any settlement which may afterwards be made with the minor. * * * *"[4]

In the early case of Jarreau v. Ludeling, 12 Mart.O.S. 106, a suit by a minor against a tutor for the balance of his estate in which the creditors of the tutor intervened to reduce the amount owed to the minor by the tutor, the court had this to say:

---

3. Under Article 415 of the Civil Code the person interdicted is in every respect like the minor who is under a tutor, both as respects his person and as respects his estate, and the rules respecting tutorship, the mode of administering his estate, the mode of rendering the accounts and other obligations applicable to tutorships apply.

4. See also Article 1191, which provides that a judgment homologating the annual account filed by curators of vacant successions and absent heirs shall be prima facie evidence of the correctness of the account so homologated.

"The provision of the law, that requires that the tutor's account be rendered before the judge, is clearly introduced for the exclusive advantage of the minor. No other person can have any interest in it.

"If the tutor has creditors who imagine that he colludes with the minor to remove his property from their reach, they are not prevented from shewing this, by the absence of an account rendered before the judge. Such an account, as it would be made without their being called to contradict it, would not stand in their way; and we cannot see of what use it would be to them. Had it been rendered, it would be open to all their objections. * * *"

In Schneider v. Burns, 45 La.Ann. 875, 13 So. 175, the court in discussing a tutor's account which had been duly homologated stated:

"In the first place the account which is rendered by a tutor pending the tutorship, and which may be homologated contradictorily with the undertutor, is not a final judgment, and does not definitively fix the situation or condition of affairs even up to the date at which it is rendered. It is at best only *prima facie* correct, and is subject to be reopened by the minor when he becomes of age, and is subject to amendment or correction to the full extent of error.

* * * * * *

"The first error in plaintiff's position is in ascribing to a provisional account homologated during the tutorship the effect of determining absolutely the relative position of tutor and ward at any given fixed period."

In Succession of Burbank, 132 La. 521, 61 So. 557, in discussing a tutor's account this court said:

"The account was filed under article 356 of the Civil Code as an annual account. It was approved by the undertutor. An annual account, under the article cited, need not be advertised. The account is not final. Illegalities or excessive charges do not bind the ward. The annual account is a record and reminder of the amounts collected and the amounts expended. It is only prima facie correct."

■ The homologated provisional account of the curator in the instant case was not one even required by the Code, but was apparently an effort by the curator to discharge its duty under the eye of the court. It was not rendered contradictorily with anyone. It was made without notice to anyone, without proof, and without a hearing, and at most could only be prima facie correct. It certainly cannot be considered a thing adjudged. La.Civ.Code Art. 2286. What was said in Succession of Lampton, 35 La.Ann. 418, in which the court was discussing an ex parte order putting heirs in possession and in which it was

contended that such an order was res judicata, is pertinent here:

"The *ex parte* order, recognising the mother and daughter as entitled to the estate and putting them in possession thereof, cannot form *res judicata* as to any one. It lacks the essential elements for such plea. It was made in a proceeding, not a suit in its legal sense. There were neither proper parties, nor issue joined. It was made without notice to anyone, without proof, and without hearing. * * * The order is *prima facie* evidence of their capacities as widow and heir, but their recognition cannot preclude other heirs nor creditors from shewing the contrary. * * *" See also Succession of Hawkins, 139 La. 228, 71 So. 492; Taylor v. Williams, 162 La. 92, 110 So. 100; West v. Goodwin, 176 La. 873, 147 So. 20.

An example of the situation here in reverse more dramatically demonstrates that this curator's account is not res judicata. If the debt to Dr. Bernhard had been put down on the account as $500.00 and the account had been homologated also without issue joined, without proof, and without a hearing, would the judgment homologating the account for this lesser amount be considered as a thing adjudged so as to bar Dr. Bernhard from actually showing and proving a greater amount due? Decidedly not.

As pointed out in our statement of facts, we are not here dealing with an insolvency matter as was the court in the Phoenix Homestead and Canal Bank cases, supra, which stand for the proposition that a duly advertised provisional account in insolvency matters cannot be contested after homologation. The early case of Gardiner v. Brashear, 9 Rob. 61, relied on in the Phoenix case, recognized the difference obtaining between solvent and insolvent matters. In the Gardiner case the creditors of a succession were allowed to recover more than the homologated account showed to be owed them, the law of the case being set forth in the syllabus thus:

"A judgment homologating a tableau of distribution of the effects of an insolvent, is final, and has the force of *res judicata* so far as it settles the rank and privileges of the creditors; * * * *Aliter*, where the tableau is but provisional, presented in the course of the settlement of a solvent estate, the object of which was not to show the amount of the debts, but how the funds on hand were to be distributed."

The Phoenix Homestead and Canal Bank cases involved entirely different matters and different circumstances, and are not decisive here.

Relator contends that prescription was interrupted by repeated acknowledgments of the debt made by the attorney who represented Mrs. Rembert while she was living. Under Article 2997 of the

Civil Code the authority of an attorney to acknowledge a debt must be express and special, and no such authority is shown in the attorney here.

Relator also contends that verbal acknowledgments of the debt by the curator interrupted the running of prescription. Even if he is correct in this contention, as pointed out by the Court of Appeal the date of any such acknowledgment or promise to pay is not fixed with certainty and definiteness. However, had such an interruption occurred on the very date of the curator's qualification, that is, September 17, 1958, relator would be entitled in addition only to charges made from September 17, 1955, to January 29, 1956 (the date prescription was interrupted by the inclusion of Dr. Bernhard's debt on the curator's provisional account), and Dr. Bernhard's itemized bill shows no charges for this period.

For the reasons assigned the judgment of the Court of Appeal is affirmed. Relator is to pay all costs.

Rehearing denied; FOURNET, C. J., and McCALEB and HAMLIN, JJ., are of the opinion that a rehearing should be granted for the purpose of considering whether the running of prescription was suspended during the time elapsing from the date the interdiction proceeding was instituted until the date on which the curator was appointed.