148 So. 37

**HOUGHTON v. HALL et al.**

No. 31445.

March 27, 1933.

Rehearing Denied May 1, 1933.

Laycock & Moyse, Dewey J. Sanchez, and Moise Thibodeaux, all of Baton Rouge, for executors and trustees and Succession of A. V. Hall, appellants.

Clyde C. Ratcliff, of Baton Rouge, for tutor ad hoc for the minor Vernon Davis, appellant.

Joseph A. Loret, of Baton Rouge, for appellee.

OVERTON, Justice.

This suit was brought by plaintiff to have decreed five pieces of real estate and certain furniture appearing in the inventory of the succession of Clara Hall McCormick, widow of Frederick L. McCormick, as the paraphernal property of the decedent, to be community property, belonging to the community that existed between decedent and her late husband, Frederick L. McCormick, the latter's half of which is claimed by plaintiff, as his forced heir, and to reduce to the disposable portion certain legacies, made by Mrs. McCormick, to the end that plaintiff may re-

ceive her légitime from Mrs. McCormick's estate.

Mrs. McCormick, née Hall, was married to Frederick L. McCormick on May 26, 1897. No children were born of the marriage, and neither party to it left any ascendants. On January 21, 1906, Mr. and Mrs. McCormick adopted Rhene Swart, the plaintiff herein, by notarial act. No other child was adopted by them.

Plaintiff married Albert B. Davis. Of this marriage, one child was born—a son, named Vernon Davis. This marriage was later dissolved by divorce. Thereafter, plaintiff married her present husband, Frank S. Houghton, and moved from Baton Rouge, La., to Birmingham, Ala., where she now resides with her husband.

Frederick L. McCormick, the father by adoption, of plaintiff, died intestate, in Baton Rouge, on January 21, 1929. His succession was opened in Baton Rouge. The only property, listed on the inventory, as left by him, was stock in the Standard Oil Company, for which company he worked for a number of years, and was then pensioned by the company some seven years before his death. The stock was listed as community property.

Mrs. McCormick was recognized in the probate proceedings as widow in community, and plaintiff was recognized as Mr. McCormick's heir. Plaintiff took no active part in the opening of the succession. She was absent at her home in Birmingham during the succession proceedings. Mrs. McCormick attended to the matter. All that plaintiff had to do with the succession was to sign a power of attorney for the sale of the stock and to

receipt for her half of the proceeds as heir of her adopted father.

When Mrs. McCormick married Frederick L. McCormick, she had nothing whatever. So far as the record establishes she inherited nothing during marriage. However, Mrs. McCormick was energetic and apparently ambitious to acquire property. During the marriage she bought and sold a number of pieces of immovable property. Some of the deeds recite that she made the purchases with her own separate and paraphernal funds while others do not contain this recital. Of the numerous pieces she purchased between the years 1897 and 1928, only five pieces were still held by her at the time of her death, which are the pieces involved here. The rest she sold from time to time, making by the sales, profits ranging from $40 to $4,500.

The death of Mrs. McCormick occurred on November 5, 1930. By her will, she left to Vernon Davis, the son of her adopted daughter, two pieces of real estate, to be held in trust for a limited time by two trustees named. She also left three legacies of $100 each to three relatives, attempted to make a bequest to Mrs. Odile Wilson, but failed to state what the bequest was, and made a bequest to plaintiff.

There was judgment below in favor of plaintiff, recognizing her as the owner in her own right, by inheritance from Frederick L. McCormick, of an undivided one-half of the five pieces of real property, involved in this suit, and also of an undivided one-half interest in the furniture left, and reducing the bequest of the two pieces of real estate to Vernon Davis to an undivided 22/100 each, and the three legacies in favor of the three relatives from $100 each to $22 each, and decreeing that the attempted bequest to Mrs. Odile Wilson was no bequest whatever. Nearly all of the defendants have appealed from the judgment, including the minor, Vernon Davis.

■ As we have said, all of the property ever acquired by Mrs. McCormick was acquired by her during her marriage. The presumption therefore is that the moment it was acquired the title to it vested in the community, or in other words that it became the property of the community, existing between the two spouses—and this, no matter in whose name the acquisitions were made—whether in the name of the husband or in the name of the wife. Civil Code, art. 2402. Such being the presumption, those who assert that property so acquired is the separate property of one of the spouses must establish it. Huntington, Administrator, v. Legros, 18 La. Ann. 126; Cosgrove v. His Creditors, 41 La. Ann. 274, 6 So. 585. This presumption is not overcome by the declaration of the spouses in a deed to the wife that the latter is purchasing with her own separate and paraphernal funds, under her separate administration. Shaw v. Hill, 20 La. Ann. 531, 96 Am. Dec. 420; Gogreve v. Dehon, 41 La. Ann. 244, 6 So. 31. The wife, and those claiming through or from her, to overcome the presumption in favor of the community, must establish three crucial facts, namely: (1) The paraphernality of the funds; (2) the administration thereof separately and apart from her husband; and (3) investment by her. Stauffer, Macready & Co. v. Morgan, 39 La. Ann. 632, 2 So. 98.

■ The first piece of property acquired by Mrs. McCormick was acquired a year or

two after her marriage, and in fact, according to the statement of A. V. Hall, was no acquisition by Mrs. McCormick at all, but was a transfer made by W. P. Denham, at the instance of A. V. Hall, to the latter's sister, Mrs. McCormick, to be held by her for the benefit of her brother, to shield it from her brother's creditors. This land was later transferred by Mrs. McCormick to her brother's wife, Hall says, without consideration. Prior to the last transfer, Hall states that he desired to enlarge the tract by purchasing an adjoining tract for $300. This tract he also had transferred to his sister, Mrs. McCormick, for the same purpose that the first tract was transferred to her. Hall testifies that, although he had the second tract deeded to Mrs. McCormick with the understanding that she would also hold title to it for him, nevertheless that, when Mrs. McCormick transferred the first piece, she was holding to Hall's wife, he agreed that she might keep it as a gift, and then he says that he permitted her to keep it in consideration of protecting his property, or in other words as compensation for services rendered. Mrs. McCormick sold this tract in 1902 for $340.

It is urged by defendants that Mrs. McCormick was permitted to retain the tract, sold by her in 1902 for $340, as a donation. If so, the tract became her separate property, since donations made to the wife are her separate property. If the land was her separate property, the price she later received for it, by her own efforts, amounting to $340, may be correctly said to have been her separate property.

It is seriously doubtful whether we should permit parol evidence to convert what is a

sale on its face by a subsequent parol agreement into a donation, in order to show that property standing in the name of the wife is hers by donation. Were we to do so in any particular instance, the parol evidence here is insufficient in weight to justify us in holding that there was a donation. If Mrs. McCormick was permitted to retain the land in consideration of services rendered, although the morality of the consideration is not above criticism, the transaction could not be considered a donation, but one in compensation for services rendered. Services rendered by the wife, at that time, long prior to the passage of Act No. 170 of 1912, amending article 2334 of the Civil Code, beyond question, enured to the benefit of the community, and not to the wife alone. Civ. Code, art. 2402.

■ We therefore find, aided by the presumption in favor of the community, that the $340 derived from the sale was community property. Even though we were to hold that the evidence warrants the conclusion that the transaction was a donation, and that the fund derived therefrom was the separate property of the wife, nevertheless, assuming that the $340 formed part of the next purchase of property by the wife, it was wholly insufficient to pay or meet the consideration therefor. The deed to the next piece was passed on April 23, 1907, and the consideration was $2,750. From what source Mrs. McCormick derived the remainder of the consideration does not appear. She may have derived it by means of her own industry, or it may have come from the industry of her husband. Either would have made the property community property, for the proceeds of the industry of either spouse, at that time, enured unmis-

takably to the community, and the confusion of separate and community funds in making up the consideration would make the property purchased community property. Reine v. Reine, 170 La. 839, 129 So. 364; Succession of Coste, 43 La. Ann. 144, 9 So. 62; De Sentmanat v. Soule, 33 La. Ann. 609.

This, in substance, may be said concerning every acquisition of property made by Mrs. McCormick, up to the passage of Act No. 170 of 1912. All of the property in the name of Mrs. McCormick up to that time, save possibly the tract, which was sold for $340, and which we have held not to have been her separate property, was community property. It was all sold and presumably the proceeds were reinvested in property acquired after that date.

In deciding whether Mrs. McCormick had any, or sufficient, paraphernal funds with which to acquire paraphernal property, and thereby to determine whether defendants have shown that the property in her name at the time of her death was her separate property, we must take into consideration the date of the promulgation of Act No. 170 of 1912. We must take into consideration that date, because, although defendants concede that prior to then the proceeds of the industry of either spouse belonged to the community, they urge that, by Act No. 170 of 1912, the earnings of the wife, when carrying on a business or industry separate from her husband, whether the spouses be living together or not, are her separate property. They contend that while Mrs. McCormick and her husband were living together (for they never separated) that Mrs. McCormick carried on a separate business, namely the business of

buying and selling real estate, and that for a time she was a licensed real estate agent. The businesses, so conducted, are pointed out as sources (more particularly, if not virtually entirely, the former) from which she derived separate funds.

In the year 1902, and, in fact, for many years prior thereto, there were two articles of the Civil Code treating of the classification of the property of married persons into separate and common property, more comprehensively than any other articles of the Code. These two articles still exist, though changed somewhat in substance and in form. One of these articles is article 2402, which, at the beginning of the year 1902, read as follows:

"This partnership or community consists of the profits of all the effects of which the husband has the administration and enjoyment, either of right or in fact, of the produce of the reciprocal industry and labor of both husband and wife, and of the estates which they may acquire during the marriage, either by donations made jointly to them both, or by purchase, or in any other similar way, even although the purchase be only in the name of one of the two and not of both, because in that case the period of time when the purchase is made is alone attended to, and not the person who made the purchase."

This article was amended by Act No. 68 of 1902, so as to add a clause at the end thereof, providing that damages, resulting from personal injuries to the wife, shall not form part of the community, and shall be recoverable by her alone, and that, should the wife die as a result of the injuries, the right to recover damages shall be as now provided by

existing laws. The article has not since been amended and re-enacted, though it has been affected to some extent by other legislation, which will appear in the course of this opinion.

Likewise at the commencement of the year 1902, there was another article of the Code, treating of the classification of the property of married persons, namely, article 2334, which existed long prior to the adoption of the Code of 1870. This is one of the two articles, to which we referred a moment ago. It reads as follows:

"The property of married persons is divided into separate property and common property.

"Separate property is that which either party brings into the marriage, or acquires during the marriage by inheritance or by donation made to him or her particularly.

"Common property is that which is acquired by the husband and wife during marriage, in any manner different from that above declared."

This article was amended in 1912, and, in point of fact, re-enacted, by Act No. 170 of 1912. The act, amending it, reproduces the first paragraph of the article, without the slightest substantial change. The same may be said of the second paragraph of the article, which is likewise reproduced, the only change being, which is not substantial, as it did not change the law, is to declare property purchased with separate funds separate property. However, immediately following the second paragraph of the article, a new paragraph is inserted, out of which the discussion in this case grows, which, due to its importance herein, we quote in full. The paragraph, which is the third one of the enacting part of the act, reads as follows:

"The earnings of the wife when living apart from her husband although not separated by judgment of court, her earnings when carrying on a business, trade, occupation or industry separate from her husband, actions for damages resulting from offenses and quasi offenses, and the property purchased with all funds thus derived, are her separate property."

The third paragraph of the article is repeated verbatim as the fourth paragraph of the act, with this clause added: "But when the title to community property stands in the name of the wife, it cannot be mortgaged or sold by the husband without her written authority or consent." The fifth paragraph of the act repeals all laws or parts of laws in conflict with it.

This act was replaced by Act No. 186 of 1920, which repealed not only all laws or parts of laws in conflict with it, but expressly mentions in the repeal the preceding act of 1912. The act repeats verbatim the act of 1912, with a new paragraph added, appearing between the paragraphs defining separate property and common property, reading as follows:

"Actions for damages resulting from offenses and quasi offenses suffered by the husband, living separate and apart from his wife, by reason of fault on her part, sufficient for separation or divorce shall be his separate property."

The point upon which we are called upon to construe the acts of 1912 and 1920 is, whether

these acts make the earnings of the wife, while she is living with her husband, though she is pursuing a separate business or occupation from him, such as a real estate business, her separate property. Unquestionably, under these acts, were the husband and wife separated, though not judicially, her earnings would be her separate property, but when these acts are carefully read, it is, we think, more than doubtful that, when the spouses are not separated, such earnings are not her separate property, but are common property, or in other words, belong to the matrimonial community.

For time, which we may term immemorial, the community of acquests and gains has been a reciprocal one, at least, up to the passage of the act of 1912. It is true that the wife has had, in the division of its assets, or in the rules governing it, barring the right of the husband as head and master of the community, somewhat the advantage, but never sufficiently to make serious inroads into the reciprocal nature of the partnership. If the construction contended for by defendants is to prevail, the effect of the two acts will be to make a material change in the law, and, at least in one instance, a change which would not be expected. For example, article 131 of the Civil Code provides that, "if. the wife is a public merchant, she may, without being empowered by her husband, obligate herself in anything relating to her trade; and in such case, her husband is bound also, if there exists a community of property between them. * * *" Where there does exist a community of property between the spouses, which is the case in most instances, the profits of the business, at least,

up to the passage of the act of 1912, belong to the community. The court, in order to consider such profits as the separate property of the wife, would have to consider the entire article repealed, in spite of the fact that a community existed between the spouses, and notwithstanding there is no conflict between the article and the act in respect to the existence of a community, or else say to the husband that you are bound for your wife's debts in her capacity as a public merchant, in view of the community existing between you and her, although the community will receive no part of the profits. It is true that the same consequences will result if the husband and wife are separated, though not judicially, and though there is no question that where they are so separated the wife's earnings are her separate property, notwithstanding the continued existence of the community. However, the mere fact of the separation in such instance, is most likely to bring about a dissolution of the community by a separation, judicially granted, from bed and board, and thereby bring about relief.

Besides the foregoing, the construction contended for by defendants would seem to be in its nature unjust in its general application, and so unlike the conception of a community that we seriously doubt that the Legislature intended such a construction to be given the acts. In view of these observations, we might look for the Legislature, if it intended to make such a fundamental change by a law to be incorporated in the Civil Code, the law to be supplanted having stood the test for over a century, and having entered into the lives daily of all of our people, to give expression to the change more clearly than it seems to us it has.

In making these observations, it may not be amiss to note that although the act of 1912 was adopted nearly twenty-one years ago, and the act of 1920, nearly thirteen years ago, this and another case, submitted last month, seem to be the first cases, brought to this court, in which the point here raised has been presented, although cases have been submitted, involving facts, calling for the consideration, on the point here raised, of either the act of 1912 or the act of 1920, such as the cases of Hellberg v. Hyland, 168 La. 493, 122 So. 593, Reine v. Reine, 170 La. 839, 129 So. 364, and Vercher v. Roy, 171 La. 524, 131 So. 658. In the Vercher Case the act of 1920 is cited as authority for the ruling, there made, which was to the effect that compensation for services performed by the wife in nursing and caring for her father, while living with her husband, if due at all, was due to the community, but the ruling was made without discussing or mentioning the point here made. None of these rulings, although they may all be correct, on the point presented here, is entitled to full force as precedent in deciding this case, by reason of the fact that there was no consideration, so far as appears, of the point.

Dr. Harriet S. Daggett, Associate Professor of Law, in the Louisiana State University, has treated in a learned and thoughtful manner, the question now under consideration, in her treatise on "The Community Property System of Louisiana with Comparative Studies," beginning at page 7 thereof, in which references to the question are also made at pages 54 and 176 thereof. Dr. Daggett takes the position and reaches the conclusion that whether the wife be living apart from her husband or not, the earnings of her separate industry are her separate property, and that the Hellberg Case was erroneously decided upon this and another point, relating to the paraphernality of the profits of the investment of the wife's separate estate, upon which latter point she is correct. The Tulane Law Review, in vol. 4, No. 2, p. 281, and Loyola Law Journal, vol. 11, No. 1, p. 28, in reviewing the Hellberg Case, take the same position as does Dr. Daggett.

This court, after hearing arguments in two cases, on the question presented here, and after reading the briefs in those cases, has reached a different conclusion from that reached by Dr. Daggett and the two law reviews, touching the proper interpretation of the acts of 1912 and 1920. This conclusion is reached, not only on the observations already made, but more especially upon what is presently to be said herein.

For the purpose of convenience we shall requote the crucial paragraph involved, appearing in the acts of both 1912 and 1920, to wit:

"The earnings of the wife when living separate and apart from her husband although not separated by judgment of court, her earnings when carrying on a business, trade, occupation or industry separate from her husband, actions for damages resulting from offenses and quasi offenses and the property purchased with all funds thus derived, are her separate property."

It cannot be questioned, with any degree of plausibility, that the earnings of the wife, with the view of protecting her, while in an unfortunate position, against the pos-

sible acts of her husband, are, by the act, made her separate property, when she is living apart from him, although there has been no separation from bed and board decreed by any court. This is, we think, the correct interpretation of what we shall term the first clause of the paragraph. The second clause begins with the words, "her earnings," which are a substantial repetition of the words, "the earnings of the wife," appearing at the beginning of the first clause. It is this repetition, if we are correct in our conclusion, that constitutes the source of trouble in this case. This repetition constitutes the source of trouble, because those opposing the construction, which we are about to give to the paragraph, rely, whether expressly or not, upon those words, as indicating that what follows discloses sources of earnings, productive of separate property, when the spouses are not living apart, but are conducting separate businesses, or pursuing separate occupations, as shown by the clause reading, "her earnings when carrying on a business, trade, occupation or industry separate from her husband."

If we were to look into the paragraph no deeper than its grammatical construction, there would be force in the position taken by those entertaining the contrary view. When we look into the substance of what the Legislature has said, we find that the earnings of the wife, mentioned in the first paragraph, which constitute her separate property, are limited by nothing, save the fact that she must be living apart from her husband, when the earnings come into existence. To give effect to the construction of those entertaining an opposite view from us as to the meaning of the paragraph would result in destroying, by making utterly useless, the first clause of the paragraph. This destruction would result from the fact that, as concerns the sources of the earnings, appearing in the second clause of the paragraph, and named therein specifically, these earnings are included in the word "earnings," appearing in the first paragraph, in which the earnings of the wife, while living apart from her husband, are made her separate property. The only difference between the two clauses, when we look alone at their grammatical construction, and treat them as not dependent on each other, is that, in the first, the restriction on the earnings is that they must arise while the wife is living apart from her husband, and in the second clause no such requirement is mentioned, but instead, the requirement is that they must arise in a separate business or occupation from that conducted by the husband. Since, in view of the fact that it is impossible to imagine, how, excluding some possible freakish instance, a wife who has separated from her husband could work for him or engage in the same business with him, it may be fairly said that the carrying on of a separate business or industry is contemplated in the first clause of the paragraph. Therefore, in substance, under the construction proposed by defendants, the only difference between the first clause and the second clause is that, in the first clause, the wife must be living apart from her husband, while in the second clause no such requirement is made. This discloses, under defendants' construction, that the second clause is broader than the first, includes the first, and thereby makes the first clause useless.

 It is a cardinal rule in the interpretation of statutes that, if it be possible to do so, every part of the statute must be given effect, for the Legislature is not presumed to insert useless and meaningless clauses in its enactments. Effect may be given reasonably to every clause in the paragraph, and by doing so we may reach the legislative intent, which is the ultimate object to be ascertained in all interpretation.

 The legislative intent was that the second clause should be explanatory of the first, as much so as if the two clauses read: "The earnings of the wife when living apart from her husband although not separated by judgment of court, [that is] her earnings when carrying on a business, trade, occupation or industry separate from her husband, * * * are her separate property."

 This construction gives, we think, full effect to both clauses, and thereby carries out the legislative intent. In no other way that we are able to conceive is it possible to give effect to both clauses. This construction moreover does not make the paragraph, in its operation, harsh and unjust, which is another thing to be avoided, if possible, in the construction of statutes, for there is no presumption that the Legislature intends to work an injustice. This construction moreover accords with the historical facts surrounding the so-called emancipation of women, for, as we appreciate it, it was never the object of women to obtain more than to be placed in society on an equal basis with men. It was never their desire to be accorded unjust advantages.

Having reached the conclusion that the earnings of the wife, whether she be conducting a separate business or pursuing a separate occupation from her husband, while living with him, under the régime of the community, are community property, we have no hesitancy in holding that the earnings of Mrs. McCormick, following the passage of the acts of 1912 and 1920, up to the time of the death of her husband, which occurred about a year and a half before her own, are community property. These earnings, together with the capital invested, which we have found to be community property, apparently entered into the purchase of the real estate, involved here, as also into the personal property. This property is therefore community property. In fact, so far as this record discloses, Mrs. Cormick, at no time, owned any separate property.

 Plaintiff, being the adopted child of both Mr. and Mrs. McCormick, who left neither ascendants nor descendants, has all of the rights of a forced heir of each. Succession of Hosser, 37 La. Ann. 839; Succession of Hawkins, 139 La. 228, 71 So. 492. Being a forced heir of Mr. and Mrs. McCormick, she is not estopped to show that the declarations in the deeds, signed by her foster parents, to the effect that Mrs. McCormick was purchasing the property, involved here, with her own separate funds, is unfounded. Westmore v. Harz, 111 La. 305, 35 So. 578; Phelps v. Mulhaupt, 146 La. 1078, 84 So. 362. Nor is plaintiff estopped from claiming that property in the name of her foster mother, and not inventoried in her foster father's succession as community property or otherwise, is, in fact, community property, in which he owned an undivided half interest, by receipting for her half interest in the proceeds of such prop-

erty as was inventoried. Plaintiff is not estopped, if for no other reason, because she was not familiar with all the facts upon which the estoppel rests, such as the facts showing that the property should have been inventoried. Of course, there is no reason why a forced heir, like any other creditor of the community, cannot show that property standing in the name of the wife is community property.

From the foregoing it appears that one-half of the property, in question here, belongs to plaintiff by inheritance from her foster father, who owned such interest therein as a member of the community. The trial court was therefore correct in allowing plaintiff that interest. In order to give plaintiff her légitime, it is necessary to reduce the bequest of the two lots to Vernon Davis to a $22\frac{2}{100}$ interest each and the remaining legacies to $22 each, the reductions being made pro rata, as was done by the trial court, and required by article 1511 of the Civil Code.

A motion to remand this case has been filed in this court to permit defendants to establish that in 1914 Mrs. McCormick received a legacy of $2,000 from Mrs. Johanna M. Parker, and to show what disposition Mrs. McCormick made of this money. No motion for a new trial was filed in the trial court on this ground, because defendants had no knowledge of this legacy until after the time for a new trial had elapsed, although it is said that plaintiff did have such knowledge, but failed to divulge it.

From certified extracts of the will of Mrs. McCormick, attached to the motion, there is abundant reason to expect that were the case remanded defendants would be able to show that, in the year 1914, Mrs. McCormick did receive such a legacy, but as to what evidence may be expected reasonably to be produced at another trial, which likely would bring about a different result, does not appear. So far as appears, what may be shown on this essential phase of the case is not yet known. There is no suggestion of the existence of any evidence, and certainly not sufficient, to show that the money went into the purchase of any real estate claimed by defendants. Apart from the sufficiency of the showing to give any reasonable expectation that, upon another trial, defendants will be able to show that the money, in whole or in part, went into the purchase of the real or personal property, in question here, there is no showing of the likelihood that defendants will be able to establish, in order to disclose a moneyed claim against the community, and thereby show a fund in favor of Mrs. McCormick's estate, to affect, favorably to them, the reduction of the legacies made by Mrs. McCormick. However, should it be shown that the $2,000 legacy was used for the benefit of the community, nevertheless this likely would not change the judgment, for the simple reason that Mr. McCormick received an inheritance, during his marriage, of about $2,000, which the circumstances would indicate was used for the benefit of the community. The two claims against the community would offset, in effect, each other. These reasons, without going further, call for the refusal of the motion to remand. A case will not be remanded unless the newly discovered evidence is such as is likely to change the result. Such is the rule as to motions for new trials. Barker v. Houssiere-Latreille Oil Co., 160 La. 52, 106 So. 672, Courtin v. Browne,

151 La. 741, 92 So. 320. It is equally applicable to motions to remand. There is no sufficient reason to remand.

The judgment is affirmed.

O'NIELL, Chief Justice (concurring).

It must be conceded that the paragraph which was inserted in article 2334 of the Civil Code by Act No. 170·of 1912 is ambiguous, viz.:

"The earnings of the wife when living apart from her husband although not separated by judgment of court, her earnings when carrying on a business, trade, occupation or industry separate from her husband, * * * are her separate property."

By Act No. 186 of 1920, the words "separate and" were inserted; but that does not seem to have changed the meaning at all, viz.:

"The earnings of the wife when living separate and apart from her husband although not separated by judgment of court, her earnings when carrying on a business, trade, occupation or industry separate from her husband, * * * are her separate property."

I say that the language is ambiguous, not only because of the dissent of a member of the court in this case, but also because, ever since Hellberg v. Hyland was decided (in May, 1929), some of the ablest professors in our law schools have been teaching the young idea that Hellberg v. Hyland cannot be reconciled with article 2334 of the Civil Code, as amended by the act of 1912. Read the excellent work on The Community Property System of Louisiana, with Comparative Studies, by Dr. Harriet Spiller Daggett, Asso-

ciate Professor of Law, Louisiana State University, pp. 8, 9, 10, 11, 201, 205, and 206; and read the comment in Tulane Law Review, vol. IV, No..2, p. 281; and the criticism in Loyola Law Journal, vol. XI, No. 1, p. 28.

I concur in the prevailing opinion in this case that the most plausible reason why Act No. 170 of 1912 was not cited or referred to —and perhaps not thought·of—in the presentation of Hellberg v. Hyland was that the statute was not deemed applicable to the case, because Mrs. Pearl Benito Hellberg was living with her husband, under the régime of the community of acquêts and gains. My idea is that the statute is applicable only to the earnings of a wife who is living separate and apart from her husband, and not to a wife who is living with her husband, sharing his earnings, and being supported by him.

Those who have construed the statute as being applicable to the earnings of a wife who is living with her husband, in the criticisms which I have referred to, undertake to divide "the earnings of the wife" into two distinct classes, viz:

(1) The earnings of the wife when living separate and apart from her husband are her separate property; and

(2) Her earnings when carrying on a business, trade, occupation, or industry separate from her husband are her separate property.

That interpretation is not first-class grammatical construction, because it undertakes to make the adjective phrase "separate from her husband" qualify the nouns *business, trade, occupation*, and *industry*. If the Legislature had meant that, the language would have been something like this: "Her earn-

ings when carrying on a business, trade, occupation or industry separate from *that of* her husband," or "her earnings when carrying on a business, trade, occupation or industry separate from her *husband's*," or, to be plainer yet, "her earnings when carrying on a business, trade, occupation or industry separate from her husband's business, trade, occupation or industry." My understanding is that the Legislature meant that the *wife* should be "separate from her husband" in order that her earnings from any business, trade, occupation, or industry carried on by her should be her separate property. It is quite right to refer to a woman as being separate from her husband, if in fact she is living apart from him, or to refer to her business, trade, occupation, or industry as being separate from *that of* her husband; but it sounds wrong to refer to a woman's *business* as being separate from her husband.

Conceding, however, to avoid unnecessary argument, that the expression "her earnings when carrying on a business, trade, occupation or industry separate from her husband" is merely a faulty way of saying "her earnings when carrying on a business, trade, occupation or industry separate from that of her husband," my opinion is that the expression is merely explanatory of the language which goes before; that is, "the earnings of the wife when living separate and apart from her husband." I say that, because I cannot imagine how a wife can have earnings when living separate and apart from her husband unless they are "her earnings when carrying on a business, trade, occupation or industry separate from her husband." How can a wife earn anything, when living separate and

apart from her husband, except by means of some business, trade, occupation, or industry? And, if she is earning money by means of some business, trade, occupation, or industry, while living separate and apart from her husband, the business, trade, occupation, or industry itself must be separate and apart from that of the husband.

If the expression "her earnings when carrying on a business, trade, occupation or industry separate from her husband" includes the wife's earnings when living with her husband, as well as when living apart from him, then the first expression, "the earnings of the wife when living separate and apart from her husband," has no meaning whatever, because it is impossible to imagine a wife having earnings from any other source than from some business, trade, occupation, or industry. Why should the Legislature say "the earnings of the wife when living separate and apart from her husband are her separate property," and then stultify itself by adding "her earnings when carrying on a business, trade, occupation or industry separate from that of her husband" are her separate property, whether she be living with him or separate and apart from him?

It was suggested in the argument of this case, and in the criticisms of Hellberg v. Hyland, that a married woman might be living separate and apart from her husband and yet be carrying on a business, trade, occupation, or industry in conjunction with him. Hence it was argued that the expression "the earnings of the wife when living separate and apart from her husband" would include her earnings when carrying on a business, trade, occupation, or industry in

conjunction with her husband, even though she is living separate and apart from him, and that the expression "her earnings when carrying on a business, trade, occupation or industry separate from her husband" would include all that she earns from her business, trade, occupation, or industry, whether she is living with or apart from her husband. But I submit that the instances where a wife, living separate and apart from her husband, carries on a business, trade, occupation, or industry in partnership with him, or conjointly with him, are so rare and far apart, if not quite unheard of, that the Legislature would never think of providing for such a case.

It is conceded by those who criticize Hellberg v. Hyland that their interpretation of Act No. 170 of 1912 would throw The Community Property System of Louisiana out of balance. Worse than that, if a wife who is living with her husband, under the régime of the community of acquêts and gains, and who is being supported by him, is entitled to all of her earnings and half of his, then the provision in article 2402 of the Civil Code, that "the produce of the reciprocal industry and labor of both husband and wife" belongs to the community, has lost its meaning. And, worse yet, if that is true, article 131 of the Civil Code, which holds the husband liable in solido with his wife for debts contracted by her in carrying on a separate business or trade, as a public merchant, is the most arbitrary and unfair law that could be imagined. In a decision rendered today, in Charles Lob's Sons v. Mrs. Louis Karnofsky et al., 177 La. 229, 148 So. 34, we are holding Louis Karnofsky liable for debts contracted by Mrs. Karnofsky in carrying on the business or trade of a tailor, as a public merchant. It may be contended that that part of article 131 of the Civil Code which says that a wife who is a public merchant may obligate herself in anything relating to her trade, without being authorized so to do by her husband, has been superseded by the emancipating laws —Act No. 94 of 1916; Act No. 244 of 1918; Act No. 219 of 1920; Act No. 34 of 1921 (Ex. Sess.); Act No. 132 of 1926; and Act No. 283 of 1928. These acts, however, have not done away with the independence of a wife who is a public merchant, but have merely extended the state of independence to all wives. But that is a matter of no importance, because the first of the emancipation acts was not enacted until 1916; that is, four years after article 2334 of the Civil Code was amended by the act of 1912; at which time article 131 of the Code was surely in full force.

I believe that all that the Legislature intended to do by the act of 1912 was to allow a wife who is living separate and apart from her husband to retain her earnings as her separate property. Whenever the husband tires of such a situation, he may put an end to it by service of the necessary summons upon his wife to return to the matrimonial domicile, or suffer the consequence.

I believe that, if the Legislature had intended to make such a radical change in the community property system of Louisiana as those who criticize Hellberg v. Hyland contend for, the change would have been made by amending articles 131 and 2402, as well as article 2334, of the Civil Code, and in a way too plain to admit of doubt.

ODOM, Justice (dissenting).

I think the court has erred in its interpretation of article 2334 of the Civil Code, as finally re-enacted by Act No. 186 of 1920. It is so clear to me that under the present law, a wife's "earnings when carrying on a business, trade, occupation or industry separate from her husband," and the property purchased with the funds thus derived, are her separate property, that I must dissent from the majority holding to the contrary.

In the prevailing opinion as well as the concurring opinion written by the Chief Justice, the view is expressed that the act is ambiguous. It is also said that it is not probable that the Legislature intended to make so radical a change in the community law of the state and that if it had intended to do so, it would have amended articles 131 and 2402 also.

The community property law of the state is contained in two articles of the Code, 2334 and 2402. Under article 2334 of the Code of 1870, the property of married persons was divided into "separate property" and "common property," defined as follows:

"Separate property is that which either party brings into the marriage, or acquires during the marriage [with separate funds, or] by inheritance or by donation made to him or her particularly.

"Common property is that which is acquired by the husband and wife during marriage, in any manner different from that above declared."

There was no change in this article of the Code until 1912, when it was re-enacted by Act No. 170, and finally re-enacted by Act

186 of 1920. Each of these acts contains the identical provisions with reference to the separate and common property of the spouses as did the original article, but went further by adding a series of situations or conditions, under which the wife may acquire and possess separate property. Under this article prior to its amendment the wife could have no separate property except that which she brought into the marriage, or acquired during marriage with separate funds or that she acquired by inheritance or donation made to her particularly. But this article of the Code as amended provides:

"The earnings of the wife when living apart from her husband, although not separated by judgment of court, her earnings when carrying on a business, trade, occupation or industry separate from her husband, actions for damages resulting from offenses and quasi offenses, and the property purchased with all funds thus derived, are her separate property."

Nothing in this law should lead to confusion. Its language is clear and free from all ambiguity. This, in fact, is virtually conceded by the court in its opinion, for it is said:

"If we were to look into the paragraph no deeper than its grammatical construction there would be force in the position, taken by those entertaining the contrary view."

In construing a law, courts should not look beyond its letter if it contains no ambiguity. "When a law is clear and free from all ambiguity, the letter of it is not to be disregarded, under the pretext of pursuing its spirit." Civ. Code, art. 13.

The language used in this amendment clearly speaks the legislative intent. There are three separate and distinct clauses, all separated and set off by commas, in the paragraph added to article 2334 by the amending acts. Each of these clauses was intentionally inserted and each has its meaning. Neither is tied to or is explanatory of the others. What the amending acts mean is this:

First, "The earnings of the wife when living apart from her husband, although not separated by judgment of court, * * * and the property purchased with all funds thus derived, are her separate property."

Second, "Her earnings when carrying on a business, trade, occupation or industry separate from her husband * * * and the property purchased with all funds thus derived, are her separate property."

And, third, "Actions for damages resulting from offenses and quasi offenses, and the property purchased with all funds thus derived, are her separate property."

The entire paragraph, divided into three separate clauses separated by commas, means just that and nothing else, when, as said by the court, we "look no deeper than its grammatical construction." But why "look deeper" than its language and its grammatical construction for its meaning? The Legislature used the English language as a vehicle for expressing its thought, its meaning, and according to grammar rules, has done so clearly. My associates have "looked deeper" into the act than its language and its grammatical construction for its meaning.

I cannot consent to a construction of the act which gives it a meaning other than that which its language clearly imports, especially as there seems to be no reason to assume that the Legislature intended that the act have a meaning not expressed.

I think the underlying thought which dominated the holding in this case is that the members of the court do not think it probable that the Legislature intended to make so radical a change in the community laws of the state. That view is expressed in both the prevailing opinion and the concurring opinion written by the Chief Justice.

Article 2334 of the Code as amended does make a radical change in the community laws of the state. But radical though the change is, it is no more so than other changes made by recent legislation concerning the status, rights, powers, and privileges of married women. Under the old régime, women could neither vote nor hold any office, civil or political. Now the right of suffrage is universal and they have the same right to hold office as men have. There is a woman in the United States Senate, one on the President's Cabinet, one in the diplomatic corps, several in the lower house of Congress, and in our own state, two hold state offices.

Formerly married women in this state could make no contract, even with reference to their own separate property, without the authorization of their husbands, and could not appear in court without their authorization or that of the judge. They were completely under the authority of their husbands. Today, they are "emancipated" from all former disabilities. The latest legislative act on the subject declares that married women,

"Shall be and are hereby fully emancipated from all the disabilities and relieved from all the incapacities to which, as such, they are now subject, and they are hereby empowered to make contracts of all kinds, or to assume or stipulate for obligations of all kinds, in any form or manner now permitted, or which may hereafter be permitted, by law for any person, married or unmarried, of either sex, and in no case shall any act, contract or obligation of a married woman require for the validity or effectiveness thereof, the authority of her husband or of the Judge." Act No. 283 of 1928, § 1.

These changes in the law are in strict accord with the drift of modern thought. They are the result, the fruit of an evolution which has recently taken place in the minds of thinking people. The changes were made necessary by changes in social and economic conditions. Until a few years ago, women engaged in no activities outside the four walls of their homes. Even unmarried women did not enter the professions or engage in business of any kind. Today the married as well as unmarried are found in all the professions and in the marts of trade. They are producers, builders, executives. They do a large part of the outside work of the world. By their own choosing they are no longer "sheltered sisters" as they were in the old days. Whether this is better for them or for the race is beside the question. The lawmakers have dealt with a condition and have not acted upon a theory.

In view of all the changes which have taken place within recent years and especially in view of the radical changes made in other laws having to do with the status not only of unmarried but of married women, I see no reason why the court should hesitate to hold that the Legislature of this state intended to make a radical change in our community law. On the contrary, it is reasonable to assume that it was intended that the old orthodox laws relating to the property rights of married women should be modified.

It is suggested in the prevailing opinion and said by the Chief Justice in his concurring opinion, that if the "Legislature had intended to make such a radical change in the community property system of Louisiana" the change would have been made by amending articles 131 and 2402, as well as article 2334 of the Civil Code. Article 131 of the Code has no reference to community property. It is not part of the community property law of the state. But article 2402 is part of the law relative to community property and as that article is written, its provisions on the subject are unquestionably directly in conflict with article 2334, as amended. Article 2402 of the Code provides that the partnership or community consists, partly, "of the produce of the reciprocal industry and labor of both husband and wife," whereas under article 2334, of the Code as amended, the "produce" of the wife's labor under certain conditions is her separate property.

That part of article 2402 of the Code which provides that the produce of the reciprocal industry and labor of both the husband and the wife fall into the community is no longer a part of the community property law of the state. It was repealed by the acts which re-enacted article 2334. Act No. 170 of 1912 contains the following repealing clause:

"Section 2. Be it further enacted, etc., That all laws or parts of laws in conflict herewith, be and the same are hereby repealed."

Act No. 186 of 1920, adopted eight years later, and eighteen years after article 2402 was amended and re-enacted, contains the following repealing clause:

"Section 2. Be it further enacted, etc., That all laws or parts of laws in conflict herewith be and the same are hereby repealed, particularly Act 170 of the General Assembly of Louisiana for the year 1912."

It was therefore unnecessary to amend article 2402 of the Code because in so far as that article makes the produce of the reciprocal labors of both husband and wife, under all conditions and circumstances community property, it was repealed.

It must be borne in mind that the Legislature did not, by re-enacting article 2334 of the Code, pretend to wipe out the community property law of the state in so far as the produce of the reciprocal labor and industry of the husband and wife is concerned. It only modified the general law so as to make the wife's earnings her separate property under certain conditions. Under article 2334, as amended, when the husband and wife are living together and working together, the fruits of their reciprocal labors belong to the community. The Code, as amended, specifically provides that "common property is that which is acquired by the husband and wife during marriage, in any manner different from that above declared."

The court in this case holds in effect that the Legislature by re-enacting article 2334 of the Code did make a radical change in the

community property system of the state. Under this article before its amendment as well as under article 2402, the produce of the reciprocal industry and labor of both husband and wife belonged to the community. But it is held that under the amendment the produce of the wife's industry and labor while living apart from her husband, although she be not separated from him by judgment of court, and the property purchased with funds thus derived, are her separate property. A married woman does not cease to be the wife of her husband merely because she lives apart from him. Even though living apart, they are still husband and wife and they remain so until the bonds of matrimony are dissolved by judgment of court. And if they were married under the community régime, the partnership or community of acquêts and gains exists until it is dissolved by judgment. So that unless the Legislature did make a radical change in the law by re-enacting article 2334 of the Code, and if article 2402 of the Code in so far as it relates to the earnings of the husband and wife, is yet in effect, then the earnings of the wife when living apart from her husband and not separated from him by judgment, still fall into the community. But it is held that such is not true. On the contrary, it is held that the earnings of the wife when living apart from her husband though not separated by judgment, are her separate property by virtue of the amendment to article 2334. The effect of this holding is that the amendment to article 2334 wipes out that part of article 2402 which provides that "this partnership or community consists of * * * the produce of the reciprocal industry and labor of both husband and wife."

Under the court's holding it is no longer true that the wife's earnings under all conditions fall into the community. They become community only in case she is living with him, whereas under the old law such earnings fell into the community under all conditions.

Having held that the Legislature not only intended to but did change the community property system of the state to the extent of making the wife's earnings when living apart from her husband her separate property, I see no reason why the court should refuse to follow the plain language of the statute and hold further that the wife's "earnings when carrying on a business, trade, occupation or industry separate from her husband" are also her separate property. The act so says and I see no reason why it should not be held that it was so intended.

In holding as it has the court has very clearly crossed the middle of the stream but is unwilling to go all the way to the other side.

It is said in the prevailing opinion and also in the concurring opinion of the Chief Justice that the second clause of the paragraph under consideration modifies or is explanatory of the first and the court has interpolated the words "that is" between the clauses. I do not concur in this view for the reason that the first clause needs no explanation. It is too plain to be misunderstood. The act says in plain terms that "the earnings of the wife when living apart from her husband, although not separated by judgment" are her separate property. To say that the second clause "her earnings when carrying on a business, trade, occupation or industry separate from her husband" is explanatory of the clause which im- mediately precedes it, is to convict the lawmaker of doing the vain and idle thing of trying to explain the obvious.

Besides, the court says in the majority opinion that,

"When we look into the substance of what the Legislature has said, we find that the earnings of the wife, mentioned in the first paragraph, which constitute her separate property, *are limited by nothing, save the fact that she must be living apart from her husband, when the earnings come into existence.*" (Italics are mine.)

I dissent.