## LA ROSE v. ALLIANCE CASUALTY CO. *
### No. 14644.

Court of Appeal of Louisiana. Orleans.
Oct. 30, 1933.

Henry & Cooper, of New Orleans, for appellant.

R. Moise, of New Orleans, for appellee.

HIGGINS, Judge.

This is a suit against the surety on a real estate broker's bond furnished in accordance with the provisions of Act No. 236 of 1920.

The petition contains the following allegations:

1. "That the Alliance Casualty Company, a corporation organized under the laws of the State of Pennsylvania, and authorized to do business in the State of Louisiana, sometimes hereinafter referred to as defendant, is indebted unto your petitioner in the full sum of Seven Hundred and Fifty ($750.00) Dollars, with interest from February 18th, 1932, for this, to-wit:

2. "That said defendant furnished a bond in favor of the Governor of the State of Louisiana, for Ten Thousand ($10,000.00) Dollars, from January 1st, 1932, to December 31st, 1932, under Act 236 of 1920, agreeing to pay all damages that may result from the actions of F. B. Hill, doing business as F. B. Hill Company, a licensed Real Estate Broker or Agent, as such Real Estate Broker or Agent.

3. "That on February 18th 1932, your petitioner entered into a contract with Frank B. Hill doing business as F. B. Hill Company, for the purchase of a piece of Real Estate, Lots 15 and 16, Square 18, Beverly Knowl Subdivision, Atherton Drive, Parish of Jefferson, which contract is attached hereto and made a part hereof, as if written herein.

4. "That your petitioner gave to Frank B. Hill, doing business as F. B. Hill Company, thirteen (13) shares of stock of the Acme Homestead Association, which, according to the contract were accepted as the equivalent of Seven Hundred and Fifty ($750.00) Dollars, in full payment of said real estate.

5. "That J. R. Allan, a registered salesman of F. B. Hill, doing business as F. B. Hill Company, signed the contract as 'Agent.'

6. "That although F. B. Hill, doing business as F. B. Hill Company, is mentioned in the contract as the seller of the property, the property did not belong to him at the time.

7. "That your petitioner has not been able to get title to the property and has not been able to recover the Seven Hundred and Fifty ($750.00) Dollars, the purchase price of said property.

8. "That your petitioner is informed and so avers that the said F. B. Hill has permanently left the State."

The relevant part of the contract which is attached to and made part of the petition, reads as follows:

"No. 2209.

"F. B. Hill Company
"323–4–40–41 Canal Bank Building
"New Orleans, Feb. 18, 1932.

"Frank B. Hill, doing business under the trade name of F. B. Hill Company, hereinafter referred to as Seller, agrees and contracts to sell to Mrs. J. A. Commeger, 618 North Salcedo Street, (Phone ———), hereinafter referred to as purchaser, and purchaser agrees and contracts to buy from Seller, upon the terms and conditions set forth below, the following described property, to-wit:

"Lots 15 x 16, situated in Sq. 18 Beverly Knowl, Subdivision, measuring approximately 50 feet front on Atherton Drive by 125 in depth. * * *

"Signed in duplicate on this the 18th day of February, 1932.
"Sol. ———
"S. L. ———
"H. L. ———
"Div. No. ———
"[Signed] Mrs. J. A. Commagere,
FM. Purchaser.
"[Signed] J. R. Allan, Agent.
"Countersigned by [Signed] C. E. Voda."

Defendant filed an exception of nonjoinder of parties defendant, and, in the alternative, exceptions of no right or cause of action.

The trial court overruled the exceptions and the defendant, with full reservations, answered admitting that it was the surety on the bond of Frank B. Hill, doing business under the trade name of F. B. Hill Company, a real estate broker, but denying the other allegations of the petition.

There was judgment for the plaintiff as prayed for and defendant has appealed.

The first point made by defendant is that there was a nonjoinder of parties defendant, Hill, the real estate broker and principal on the bond, not having been made a party to the suit.

The obligations of a surety on a real estate broker's bond are fixed by the provisions of section 16 of Act No. 236 of 1920, the pertinent part of which reads as follows: "Be it further enacted, etc., That before any person, firm * * * shall be permitted to open, engage in, manage or conduct any real estate agency, or office or deal in real estate * * * as agent or broker, either in an office or otherwise, in the State of Louisiana, such person, firm * * * shall furnish bond with good and solvent surety in favor of the Governor of the State of Louisiana in the full sum and amount of * * * for the benefit of any person in interest as his interest may appear, conditioned that such person, firm * * * shall well and truly carry out the objects and purposes for which said agency, office or business shall have been established, and that such person, firm * * * shall honestly conduct said business and shall pay all damages which may result from his or their actions as such real estate agents or brokers; and that any one who may have been injured or damaged by said agent or broker by any wrongful act done in the furtherance of said business or by any fraud or misrepresentation by said agent or broker shall have the right to sue for the recovery of such damages before any Court of competent jurisdiction."

It will be noted that this section deals exclusively with reference to the obligations and responsibility of a surety on such a bond. The bond is in favor of the Governor of the state of Louisiana for the benefit of any person who may have a claim against the real estate broker for any damage which might result from the fraudulent acts of the broker. The last provision of the above-quoted portion of section 16 gives the party who has been injured or damaged by the broker the right to sue for the recovery of his loss or damage. The question thus arises, Sue whom?

While, it is true, that it is not expressly stated that the right of action shall be directly against the surety on the broker's bond, it is clearly implied, for to say that the Legislature meant merely to state that the injured party would have the right to sue the broker would convict the Legislature of doing an unnecessary thing. Under the general law

of the state if any one defrauds another, the person defrauded has a right to bring suit against the wrongdoer to recover whatever damages he may have sustained. Therefore, there was no need for the Legislature to make provision for the filing of a suit against the broker in such a situation. In order to give effect to the language in question, and to avoid saying that the Legislature was merely writing idle words, the implication is irresistible and one is forced to conclude that it was the intention of the framers of the statute to give a party, who was defrauded by a real estate broker, a direct right of action against the surety on his bond to recover any damages which may have resulted from his fraudulent acts.

In Houghton v. Hall, 177 La. 237, 148 So. 37, 42, the Supreme Court said: "It is a cardinal rule in the interpretation of statutes that, if it be possible to do so, every part of the statute must be given effect, for the Legislature is not presumed to insert useless and meaningless clauses in its enactments. Effect may be given reasonably to every clause in the paragraph, and by doing so we may reach the legislative intent, which is the ultimate object to be ascertained in all interpretation."

The surety's remedy in such a situation is provided for by article 3057 of the Revised Civil Code which affords a surety a means of protecting itself against the principal on the bond.

■ We have been referred to the case of Wiemann v. Mainegra, 112 La. 305, 36 So. 358, where it was held that a judgment could not be rendered against the surety until it had been judicially determined that the person making the claim had a valid one against the principal and had taken the necessary steps to enforce the payment thereof. This is the general law with reference to conventional suretyship, Seymour Co., Inc., v. Castell et al., 13 La. App. 365, 125 So. 896, but has no application to a statutory bond where the Legislature has provided that a direct action may be brought against the surety. We believe that the trial court was correct in overruling the exception of nonjoinder.

The exceptions of no right or cause of action are based upon the ground that the contract, which is annexed to and made a part of the petition, shows that Hill was acting as an individual and not in his capacity as a real estate broker, and therefore, the alleged misconduct is not covered by the bond. Counsel for defendant argues that as the contract describes Hill as the "seller" and does not refer to him as a real estate broker, it shows that he was acting for himself as owner of the property, and that under section 2 of Act No. 236 of 1920, an owner of real estate who sells his own property is exempt from the provisions of the act. He also points out that as section 2 defines a real estate broker as one who acts "for others," it cannot be said that he is acting in his capacity as such when he acts for his own account, i. e., selling his own property.

■ In passing upon an exception of no right or cause of action, the allegations of the petition must be considered in connection with the documents which are annexed to and made a part thereof. As we understand the petition, plaintiff, a prospective purchaser of real estate, claims $750 damages for the loss of thirteen shares of homestead stock resulting from the illegal and fraudulent acts of Frank B. Hill doing business under the trade name of F. B. Hill Company, a real estate broker. It is alleged that Hill, through one of his real estate salesmen, contracted with plaintiff to sell her a piece of property which he did not own; that the title to the land was never conveyed to her, and he refused to return the homestead stock or to pay the equivalent of its value, although repeated demands were made therefor, and that as Hill has absconded and closed his place of business, the claim is made against the surety on his real estate broker's bond.

The fallacy in the defendant's argument is that it ignores the allegations of the petition and rests solely upon the language of the contract describing Hill as the "seller" of the property.

■ Considering the allegations of the petition in connection with the contract, it is our opinion that while the petition could have been more definite or explicit in setting forth that the fraudulent acts complained of were done by Frank B. Hill in his capacity as real estate broker and not as an individual, nevertheless, it sufficiently appears that that was the theory upon which plaintiff predicated her case. An exception of vagueness would have been the proper plea and not an exception of no right or cause of action. The trial court properly overruled these exceptions.

With reference to the merits of the case, plaintiff testified that she entered into and signed the contract on the blank form furnished by Hill, doing business under the trade name of F. B. Hill Company, a real estate broker, in his office in his presence; that J. R. Allan, a real estate salesman connected with the brokerage office of Hill, signed the contract for him; that neither the property was conveyed to her nor the stock returned nor its value paid to her, although she made repeated demands therefor, and that Hill has left the state permanently, having closed his office and absconded with the money realized from the sale of the stock.

C. E. Voda, who was the bookkeeper in the real estate office of Hill, at the time the transaction was consummated, testified that J. R. Allan was a qualified real estate salesman and employed as sales manager of the real estate brokerage office of Hill; that the contract was signed and the stock delivered in Hill's office

in his presence; that Hill then ordered him to sell the stock which he did, realizing $750 for it, and that he deposited this money to the account of Frank B. Hill, doing business under the trade name of F. B. Hill Company, a real estate broker; that Hill did not own the property in question; and that he absconded and his office was closed.

Plaintiff also introduced documentary evidence consisting of public records which showed that Mrs. Louise L. Durand was the owner of the land and that she never conveyed or agreed to sell it to Hill; that Frank B. Hill, doing business under the trade name of F. B. Hill Company, qualified and had issued to him a real estate broker's license; and that J. R. Allan was a duly qualified real estate salesman employed by Hill as a real estate broker.

Defendant did not offer any evidence.

It is obvious that section 2 of Act No. 236 of 1920 has no application to the present case because Hill never owned the property before or after the contract was signed. The public records show that he did not have any rights or interest in the property whatsoever. If Hill was not selling his own property, it is reasonable and logical to say that while the contract purports to be a transaction between him as owner and plaintiff as purchaser, Hill must have been acting as a real estate broker in negotiating the sale of the property for the owner. This conclusion is inescapable because J. R. Allan, the real estate salesman, could not have legally acted for anyone except Hill in his capacity as a real estate broker, his employer, in negotiating the sale and signing the contract, under the expressed provisions of section 15 of Act No. 236 of 1920, for Hill was not the owner of the property. Garvey v. Lagattuta, 15 La. App. 414, 132 So. 267; Walker v. Meyer, 167 La. 218, 119 So. 26.

As the plaintiff's evidence establishes a prima facie case which was not rebutted, we conclude that defendant is liable.

For the reasons assigned the judgment appealed from is affirmed.

Affirmed.