Plaintiff was awarded by the Fourth District Court, Parish of Ouachita, on June 26, 1941, judgment for $520.21 on open account against F.A. Crigler, on which execution issued in March, 1942. The Sheriff of Ouachita Parish seized under the writ and advertised for sale, as the property of defendant, a 1941 model Chevrolet sedan. However, before the sale was consummated, Mrs. Crigler, by intervention and third opposition, asserted ownership of the car and prayed that the fi.fa. be set aside, that her ownership be recognized and possession of the car restored to her. She also sued for damages allegedly sustained by her on account of the unlawful seizure of the automobile, itemized in her petition, for the sum of $1,210. She also prays that should the car be sold prior to *Page 513 
the termination of the issue of ownership, her right to proceed against plaintiff and the sheriff for its value be reserved to her.
Intervenor alleges that she purchased the seized car from Lee-Rogers Chevrolet Company, Inc., of the City of Monroe, Louisiana, for $1,228.84 on March 18, 1941, "having traded in a Ford pick-up truck which she purchased from money she secured from her first husband's estate". She also alleges:
"Petitioner further shows that she was paying for said automobile from funds which she was deriving solely from her first husband's estate and from her separate business over which her present husband, F.A. Crigler, has no control."
The sheriff and plaintiff were impleaded. Each answered. For lack of information upon which to base a belief, the sheriff denied the material allegations of the petition. Plaintiff denied articulately all of said allegations save that the car was seized pursuant to its instructions to the sheriff.
There was judgment for intervenor recognizing her ownership of the automobile, for attorney's fee in the sum of $150 and $500 for humiliation, embarrassment, loss of business, deprivation of the use of the car, and for costs. Her right to sue plaintiff for the car's value was reserved to her. From this judgment plaintiff prosecutes this appeal.
The primary question tendered by the intervention concerns the ownership of the car. Is it an asset of the community between Mr. and Mrs. Crigler or is it the separate property of the intervenor? If of the former status, of course, it is subject to seizure for payment of the husband's obligation, and sale thereof to satisfy such was legally made.
Mrs. Crigler purchased the car from Lee-Rogers Chevrolet Company, Inc., on March 19, 1941, for the price (including carrying charges) of $1,055.08, of which amount only $126.76 is recited in the act of sale to have been paid in cash. The balance was evidenced by her mortgage note payable in twenty-four (24) installments of $38.68 each. All installments were discharged to the time of seizure, a total of eleven. In reality, no part of the purchase price was paid in cash. The recited cash payment was the value of the equity intervenor had in a one-half ton pick-up truck she acquired from her son, Jerry, on account of indebtedness due to her.
Intervenor's first husband, Sam E. Love, died June 1, 1922, while living in Bossier Parish. He left three minor sons as his sole heirs, issue of his marriage to intervenor, to whom she qualified as tutrix. The inventory of the minors' property includes only one-sixth interest in a tract of ninety (90) acres in Bossier Parish, presumably the separate property of the deceased, and one-half interest in a bank deposit amounting to $703.87, and two other small items appraised at $22.50.
At the time of Love's death intervenor was earning $100 per month and, according to her testimony, continued to earn this wage from different employers until 1929 when she purchased and began the operation of a cafe in Bossier City, Louisiana, paying therefor $2,500. She continued in this business until some time during the year 1939. She married Mr. Crigler in September, 1929, after purchasing the cafe and has since continuously lived with him. She sold the cafe for $1,500 cash in 1939 and moved to the City of Monroe, Louisiana, in October of that year. At that time she owned a home in Bossier City but did not dispose of it until August, 1941. She testified that the lots on which this home was erected were owned by Love at the time of his death. The inventory does not support her in this respect. The lots are not listed thereon.
Intervenor's son, Jerry, preceded her to Monroe and was there engaged in running a produce store which he acquired with funds loaned him by his mother. He thereafter opened up a fruit stand on Louisville Avenue in said city which will hereinafter receive further discussion.
Intervenor and her husband testified that, all told, she loaned Jerry Love approximately $3,000, $500 of which was from the price of the cafe's sale. They also testified that Mr. Crigler exercised no control over nor participated in the conduct of the cafe, and that he has not worked any since his marriage to intervenor.
While Mrs. Crigler lived in Bossier City and other places prior to moving to Monroe, she carried checking accounts in different banks, and after adopting Monroe as her home she transferred her banking business there, using the Central Savings Bank and Trust Company for this purpose. After *Page 514 
moving to Monroe, she leased her home in Bossier City for eighteen months at $50 per month and thereafter until it was sold, at $40 per month.
On March 3, 1941, intervenor took over the fruit stand business on Louisville Avenue and thereafter operated it as her own. On that date her son, Jerry, by written act, for a declared consideration of $100 cash, sold and delivered to her the entire stock of fruit and vegetables on hand. Also, on said date, by written act, Jerry leased to his mother for a period of five years, all of the fixtures employed in the fruit stand and the one-half ton pickup truck traded in on the price of the seized car. The fruit and vegetables on hand and all supplements thereto were included in this lease. The lease instrument contains this declaration, to-wit:
"The lessee has lent the lessor One Thousand and no/100 ($1000.00) Dollars on the above described property and has taken a chattel mortgage note on said equipment, and the said Thirty and no/100 ($30.00) Dollars rent herein paid is to be applied on the said One Thousand and no/100 ($1000.00) Dollars Chattel Mortgage note, first to the payment of interest due on said note and the balance to be applied on the principal on said note."
Contemporaneously with the execution of the above mentioned instruments, Jerry also executed the $1,000 note and chattel mortgage securing payment of same referred to in the lease, and delivered them to his mother. Thereafter (the date not being shown) he surrendered to her the truck.
The conditions of the delivery of the truck to intervenor are not disclosed. It was affected by a mortgage for $173.24 which the Lee-Rogers Chevrolet Company, Inc. paid off. Presumably, the truck was valued at $300 as the $126.76, recited cash payment on the price of the seized car, plus the amount of the mortgage against the truck equals this sum.
Intervenor admits that the cash money acquired by her as widow in community and as tutrix to her minor children was deposited in the bank along with her own earnings after her first husband's death, and were checked against regularly; that income from the cafe and the price of sale thereof, except the part loaned her son, were likewise deposited and expended; that since moving to Monroe rents derived from the Bossier City residence and receipts from the fruit stand and proceeds of sale of the residence have likewise been commingled and expended; that living expenses, payments on cars and expenses of operating same, as well as price of purchases to keep the fruit stand going, and incidental expenses thereof have indiscriminately been paid from said commingled deposits by checks or cash withdrawals. Ledger sheets of the bank containing her checking account from February, 1941, to March, 1942, disclose that on February 7, 1941, she had a balance of $4.50. On August 27, 1941, there was a balance of $1.16. On that date she deposited $650 of the price of sale of the Bossier City home. Notwithstanding other deposits were made during the time, the account showed balances as follows: $8.40 on December 3, 1941, $18.19 on February 2, 1942, and $12.37 on March 6, 1942.
It is argued by intervenor's counsel, however, that regardless of other factors, the loan of $500 to Jerry Love from proceeds of sale of the cafe was from separate funds, funds not having been commingled with community funds, and the delivery of the truck to intervenor as credit on the $1,000 note stamped the truck as being paraphernal and the application of her equity therein on the price of the seized car made the purchase thereof her separate property. The lower court specifically sustained this position.
The advances in cash to Jerry Love were made over a period of time not shown by the record. The last one was made in October, 1939. All except one were made by checks from commingled funds. Obligation for the repayment thereof was merged with the obligation to repay the $500 and all were novated by the giving of the $1,000 note. Therefore, the separate character of the obligation to pay the $500 lost its identity by the merger and novation. In addition to this, it is not shown that the intervenor was to credit Jerry with any definite amount as the truck's value.
All property acquired by either spouse during marriage is presumed to belong to the community. The presumption is a rebuttable one. But evidence sufficient to overcome it must be strong, clear and convincing. The burden of destroying the presumption rests upon the one asserting the separate and paraphernal character of the property involved. *Page 515 
The earnings of intervenor while operating the cafe after her marriage to Mr. Crigler went into and became an asset of the community of acquets and gains existing between them, and the same may be said of the earnings derived from the conduct of the fruit business. This is true, even should it be granted that both of said businesses were the separate property of the wife. In Charles Lob's Sons, Ltd., v. Karnofsky et al., 177 La. 229-235,148 So. 34, 36, the court specifically said and held, to-wit:
"The theory of the law, as expressed in the codal article, in holding the husband bound for the debts of his wife's separate business, is that the profits of the business belong to the matrimonial community. This was so up to the passage of Act No. 170 of 1912, and we think it is still so where the wife engaged in a separate trade is living with her husband. See Houghton v. Hall [177 La. 237], 148 So. 37, and Succession of Howell [177 La. 276], 148 So. 48, this day decided."
See also Drewett v. Carnahan et al., La.App., 183 So. 103-107.
The court in the Charles Lob's Sons case stated that its views, as reflected from the quoted excerpt, were not in conflict with Act No. 186 of 1920, amending Article 2334 of the Civil Code, defining the separate and common property of married persons. Therefore, the commingling of the named earnings with the separate funds of the wife worked a metamorphosis in the status of the latter. Their identity as separate funds was lost by the commingling and they thereafter took on the quality of community funds. Smith v. Brock et al., La.App., 200 So. 342, 344, and cases cited therein. This court in the cited case, said:
"It has been frequently held and is now a well settled principle of our law that to overcome the presumption in favor of the community, the wife must establish three crucial facts, to-wit: (1) The paraphernality of the funds; (2) the administration thereof separately and apart from her husband; and (3) investment by her. Houghton v. Hall et al., 177 La. 237, 238-244, 148 So. 37; Stauffer, Macready Co. v. Morgan, 39 La.Ann. 632, 2 So. 98. Not one of these facts has been proven in the present case."
Let us consider the undisputed facts of the present case and see if intervenor has met any or all of the three named requirements. We think she has not done so. The truck was delivered to her presumably as a credit not on the $500 loaned her son, but on the $1,000 note which we hold was a community asset. It is shown that Mr. Crigler assisted to some extent in the conduct of the cafe and fruit stand businesses. And, lastly, there is no testimony which to the least extent indicates that in purchasing the seized car, intervenor intended a reinvestment of separate or paraphernal funds.
Even though it be conceded that the truck was the separate property of intervenor, there are other valid reasons for holding that the seized car did not enjoy that quality. These reasons are well stated in Montgomery v. Bouanchaud, 179 La. 312-315,154 So. 8, 9. The court therein said that the presumption of community may only be rebutted by evidence clear, positive and convincing showing, inter alia, the following:
"* * * (2) that the cash portion of the purchase price bears such a relation to the whole as that the property will afford sufficient security for the credit portion; and (3) that her paraphernal property and revenues are ample to enable her to make the purchase with reasonable expectation of meeting the deferred payments. Bachino v. Coste, 35 La.Ann. 570; Knight v. Kaufman 
Meyer, 105 La. 35, 29 So. 711; Fortier v. Barry, 111 La. 776, 35 So. 900."
There is serious doubt, as a business proposition, that the small amount of $126.76 paid on the price of the car was adequate to render it sufficient security for the unpaid balance on price. It is certain that intervenor did not have paraphernal property or revenues of that character sufficient to meet the deferred monthly installments as they fell due. The eleven payments made prior to seizure were by her checks on bank account constituted as before stated.
For the reasons herein assigned, the judgment appealed from is annulled, avoided and reversed; and intervenor's suit is dismissed and her demand rejected at her cost. *Page 516